

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

**NOV 01 2017**

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

JAMES OWENS and EDWARD HURLIMAN, individually
and on behalf of all others similarly situated

PLAINTIFFS

vs.                    Case No. _4:17-cv- 714- SWW_

RICHARD N. MASSEY; J. MATTHEW MACHEN;
W. DABBS CAVIN; WILLIAM CHANGOSE;     This case assigned to District Judge _Wright_
K. AARON CLARK; FRANK CONNER;          and to Magistrate Judge _Deere_
SCOTT T. FORD; G. BROCK GEARHART;
JOHN J. GHIRARDELLI; OMON FITZGERALD HILL;
DANIEL C. HORTON; IAN R. VAUGHAN; and
BEAR STATE FINANCIAL HOLDINGS, LLC            DEFENDANTS

## NOTICE OF REMOVAL

Defendants Richard N. Massey; J. Matthew Machen; W. Dabbs Cavin; William

Changose; K. Aaron Clark; Frank Conner; Scott T. Ford; G. Brock Gearhart; John J.

Ghirardelli; Omon Fitzgerald Hill; Daniel C. Horton; Ian R. Vaughan; and Bear State

Financial Holdings, LLC ("Defendants"), for their notice of removal of this action from

the Circuit Court of Pulaski County, Arkansas to the United States District Court for the

Eastern District of Arkansas under 28 U.S.C. §§ 1331, 1332(a), 1441, and 1446, state:

1.  This action commenced on September 11, 2017 when Plaintiff James Owens

filed his class action complaint in the Circuit Court of Pulaski County, Arkansas.

2.  On October 13, 2017, Plaintiff filed an amended class action complaint, which

included an additional named plaintiff and additional causes of action based on disclosures

made in a proxy statement governed exclusively by federal law under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n *et seq.* (the "Exchange Act").

3.   This action is pending in the Circuit Court of Pulaski County, Arkansas and is captioned *James Owens et al. v. Richard N. Massey et al.*, Case Number 60CV-17-5022.

4.   Defendants were served with the amended class action complaint on October 13, 2017. The amended class action complaint included additional allegations that Defendants violated federal disclosure laws, making this action removable under federal question grounds.

5.   This notice of removal is timely under 28 U.S.C. § 1446(b)(1).

**A.   Original Jurisdiction under 28 U.S.C. § 1331.**

6.   This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because, as made clear by the claims alleged in the amended class action complaint, this action raises a federal question. Therefore, this action is removable under 28 U.S.C. § 1441(a). Supplemental jurisdiction exists with respect to any remaining claims pursuant to 28 U.S.C. § 1367.

7.   Plaintiffs allege in the amended class action complaint, among others, claims that the proxy statement delivered to shareholders (1) "omit[s] material information that is necessary for Bear State's public shareholders to cast a fully informed vote . . ." (¶ 93); (2) "fails to disclose Bear State's projected cash flows for the years ending December 31, 2017 through December 31, 2022 on a stand-alone basis" (¶ 94); (3) fails to disclose "projections necessary to reconcile the non-GAAP (generally accepted accounting principles) projections included in the Proxy . . . to the most directly comparable GAAP measures . .

." (¶ 95); (4) "fails to disclose the individual multiples Raymond James calculated for each company and transaction utilized" in its transaction analysis (¶ 96); (5) "fails to disclose the inputs and assumptions [financial advisor] Raymond James utilized to arrive at the discount rate of 11.5% to 13.5% that it applied" (¶ 97); (6) "fails to provide any information regarding the 'revisions' that were made to Raymond James's valuation analyses between the date it made its initial fairness presentation to the Board . . . and the date it provided its 'revised financial analysis and fairness opinion to the Board" (¶ 98); (7) "fails to properly disclose Raymond James's relationship with Arvest and the amount of compensation it has received from Arvest in recent years" (¶ 99); (8) "fails to provide any information regarding . . . [(i)] the amount of compensation DD&F has received or will receive in connection with the strategic review process and Proposed Transaction," (ii) whether DD&F has performed work for either Bear State or Arvest in recent years, and (iii) whether DD&F has any financial interest in or financial ties to Arvest (¶ 100); and (9) "fails to adequately disclose the 'members of Bear State's senior management team' that are expected to continue as employees of Arvest or its affiliates following the consummation of the merger" (¶ 102).

8.    Based on these allegations, Plaintiffs allege defendants have "omitt[ed] material information from the Proxy Statement" and caused "a materially incomplete and misleading Proxy Statement to be mailed" to the shareholders of Bear State Financial, Inc. Am. Compl. ¶ 103, 93.

9.    Further, Plaintiffs raise a federal question in the amended class action complaint's "Prayer for Relief" with the explicit demand that defendants be enjoined from completing the merger "unless and until . . . [Bear State Financial, Inc.] discloses the above-

3

referenced material information that has been omitted from the Proxy to the Company's shareholders." Am. Compl., p. 42.

10. Proxy solicitations are governed by Section 14(a) of the Exchange Act. *See Staehr v. W. Capital Res., Inc.*, No. 10-1806, 2010 WL 4338652, at *3 (D. Minn. Sept. 24, 2010), adopted by, 2010 WL 4321542 (D. Minn. Oct. 26, 2010) ("The claims asserted require the resolution of a federal question: whether Defendants' proxy solicitations were materially misleading. Additionally, since proxy solicitations are governed by Section 14(a) of the Exchange Act, a determination of Defendants' duties and obligations with respect to the Proxy Statement . . . inherently requires the construction and application of federal law.").

11. Defendants' duties and obligations with respect to proxy solicitations are governed by federal law. Section 14(a) of the Exchange Act was adopted specifically to address state corporate law's silence on the issue of corporate communications with shareholders. Section 14(a) and Rule 14a–9 of the Exchange Act bar the dissemination of proxy statements that are "false or misleading with respect to any material fact." *See* 17 C.F.R. § 240.14a–9(a) and 15 U.S.C. § 78n(a).

12. When a plaintiff alleges misleading statements or material omissions in a proxy statement, as plaintiffs have done here, no more is required to allege federal subject-matter jurisdiction over the complaint, even where the plaintiffs assert only state law claims. *See Staehr*, 2010 WL 4338652, at *3; *see also Pet Quarters, Inc. v. Depository Trust and Clearing Corp.*, 559 F.3d 772, 778–80 (8th Cir. 2009) (even where plaintiff pleaded only

state law claims, federal court had removal jurisdiction because allegations directly implicated actions taken by the Securities and Exchange Commission).

13. Further, the definitive Agreement and Plan of Reorganization entered into by Bear State Financial, Inc. and Arvest Bank, among others, governing the proposed transaction, states that the "Agreement shall be governed by and construed with the Laws of the State of Arkansas *except to the extent federal law may be applicable*." (emphasis added).

14. Federal question jurisdiction therefore exists because "the plaintiff's state law claim will require a federal court to decide or construe a substantial issue of federal law." *Moriconi v. AT&T Wireless PCS, LLC*, 280 F. Supp. 2d 867, 877 (E.D. Ark. 2003).

15. Because Plaintiffs request resolution of a federal question in the amended class action complaint necessary for the resolution of the causes of action pleaded therein, this Court has jurisdiction over this action.

### B.     Original Jurisdiction under 28 U.S.C. § 1332(a).

16. Plaintiff Edward Hurliman is a citizen of the State of Oklahoma.

17. Upon information and belief, Plaintiff James Owens is a citizen of the State of Arkansas who did not own common stock of Bear State Financial, Inc. (the "Stock") at the time of the announcement of the merger transaction on August 22, 2017, or at the time this action was filed. Defendants' belief is based on Plaintiff Owen's absence from a list of non-objecting beneficial owners of the common stock of Bear State Financial, Inc. dated September 20, 2017 (the "NOBO List").

18. Therefore, upon information and belief, Plaintiff Owens is fraudulently joined in this action because he does not possess the requisite interest to have standing in this matter. For purposes of determining diversity of citizenship under 28 U.S.C. § 1332, the citizenship of fraudulently joined parties is disregarded. *See* 28 U.S.C. § 1441(b)(2); *see also Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *cf. Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002).

19. Defendant John J. Ghirardelli is a citizen of Missouri.

20. Defendant Ian R. Vaughan is a citizen of Texas.

21. Defendant Richard N. Massey is a citizen of Arkansas.

22. Defendant J. Matthew Machen is a citizen of Arkansas.

23. Defendant W. Dabbs Cavin is a citizen of Arkansas.

24. Defendant William Changose is a citizen of Arkansas.

25. Defendant K. Aaron Clark is a citizen of Arkansas.

26. Defendant Frank Conner is a citizen of Arkansas.

27. Defendant Scott T. Ford is a citizen of Arkansas.

28. Defendant G. Brock Gearhart is a citizen of Arkansas.

29. Defendant Omon Fitzgerald Hill is a citizen of Arkansas.

30. Defendant Daniel C. Horton is a citizen of Arkansas.

31. No individual defendant is a citizen of Oklahoma. The members of Bear State Financial Holdings, LLC, an Arkansas limited liability company, are citizens of Arkansas, California, Colorado, Massachusetts, Texas, and Wyoming.

32. There is complete diversity of citizenship between Plaintiff Hurliman, the relevant plaintiff, and all defendants.

33. Plaintiffs seek to enjoin consummation of a proposed merger transaction between Bear State Financial, Inc. and Arvest Bank, among others. The consideration for the merger transaction is approximately $391 million in the aggregate. Plaintiffs seek to enjoin defendants from consummating the transaction and thereby prevent the distribution of approximately $391 million in consideration to the stockholders of Bear State Financial, Inc.

34. Further, based upon Defendants' review of the NOBO List, Plaintiff Hurliman beneficially holds 10,064 shares of common stock of Bear State Financial, Inc. (the "Stock"). Pursuant to the definitive Agreement and Plan of Reorganization entered into by Bear State Financial, Inc. and Arvest Bank, among others, Arvest Bank will acquire Bear State Financial, Inc. for $10.28 per share in cash. Therefore, the amount in controversy as to Plaintiff Hurliman is at least $103,457.92.

35. In addition, Plaintiffs' amended class action complaint seeks injunctive relief, which may increase the amount in controversy. *Basham v. American Nat. County Mut. Ins. Co.*, No. 4:12-CV-4005, 2013 WL 5755684, at *8 (W.D. Ark. Oct. 23, 2013) (valuing injunctive relief as being worth at least 50% of requested monetary relief).

36. Likewise, Plaintiffs' requests for attorneys' fees adds to the amount in controversy. *Basham*, 2013 WL 5755684, at *7; *Jarrett v. Panasonic Corp. of North America,* 934 F. Supp. 2d 1020, 1025 (E.D. Ark. 2013).

37. Because this civil action involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs, this Court has original jurisdiction under 28 U.S.C. § 1332(a).

38. This Court is the appropriate court for removal of this action under 28 U.S.C. § 1446(a).

### C.   The Procedural Requisites to Removal are Met.

39. All Defendants consent to the removal of this action and have joined this Notice of Removal, in accordance with 28 U.S.C. §1446(b)(2).

40. Copies of all process, pleadings, and orders served upon Defendants or filed in this action in the Circuit Court of Pulaski County, Arkansas, along with a true and correct copy of the electronic docket sheet from the state court, are attached to this notice of removal, as Exhibit 1.

41. A copy of this notice of removal will be filed forthwith in the Circuit Court of Pulaski County, Arkansas.

42. All procedural requisites to removal have been met. Removal to this Court under 28 U.S.C. § 1441 is proper and effective hereby.

43. Defendants expressly reserve all defenses, affirmative defenses, and motions available to them. Defendants also reserve the right to supplement this Notice of Removal.

44. Defendants have not yet filed a response to the class action complaint or amended class action complaint. Defendants reserve the right to object to any defects as to personal jurisdiction, service of process, sufficiency of process, and any other defense available under Fed. R. Civ. P. 12.

45.   Defendants reserve the right to seek jurisdictional discovery regarding Plaintiff Owens' standing and any other fact at issue bearing on this Court's jurisdiction.

WHEREFORE, Defendants give notice of the removal of this action to this Court and respectfully request all just and proper relief.

Respectfully submitted,

**KUTAK ROCK LLP**

By: /s/ H. William Allen

H. William Allen, Bar No. 69001
WILLIAMS & ANDERSON PLC
111 Center Street, Suite 2200
Little Rock, Arkansas 72201
(501) 859-0575 Telephone
(501) 372-6453 Facsimile

*Attorney for Defendant Bear State
Financial Holdings, LLC*

By:

Jess Askew III, Ark. Bar No. 86005
C. David McDaniel, Ark. Bar No. 2011065
Andrew King, Ark. Bar No. 2007176
124 West Capitol Avenue, Suite 2000
Little Rock, Arkansas 72201
(501) 975-3000 Telephone
(501) 975-3001 Facsimile
jess.askew@kutakrock.com
david.mcdaniel@kutakrock.com
andrew.king@kutakrock.com

*Attorney for Richard N. Massey; J.
Matthew Machen; W. Dabbs Cavin;
William Changose; K. Aaron Clark; Frank
Conner; Scott T. Ford; G. Brock Gearhart;
John J. Ghirardelli; Omon Fitzgerald Hill;
Daniel C. Horton; and Ian R. Vaughan*

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2017, I served a true and correct copy of the foregoing on all other parties by first-class U.S. Mail, postage prepaid, to the following counsel of record:

Bryce Brewer
Bryce Brewer Law Firm, LLC
800 West 4th Street
North Little Rock, Arkansas 72114
bryce@brycebrewerlaw.com

In addition, I mailed a true and correct copy of the foregoing to the following persons who assert that they will seek to be admitted as counsel in this action *pro hac vice*:

Guri Ademi                          Juan E. Monteverde
Shpetim Ademi                       MONTEVERDE & ASSOCIATES PC
ADEMI & O'REILLY, LLP               350 Fifth Avenue, Suite 4405
3620 East Layton Ave.               New York, NY 10118
Cudahy, WI 53110

_____
Jess Askew III

## Report Selection Criteria

**Case ID:**        60CV-17-5022
**Citation No:**
**Docket Start Date:**
**Docket Ending Date:**

## Case Description

**Case ID:**     60CV-17-5022 - JAMES OWENS VS RICHARD N. MASSEY ET AL -*JURY TRIAL*
**Filing Date:**     Monday , September 11th, 2017
**Court:**     60 - PULASKI
**Location:**     CI - CIRCUIT
**Type:**     OM - CIVIL - OTHER
**Status:**     OPEN - CASE OPEN
**Images:**

## Case Event Schedule

*No case events were found.*

## Case Parties

| Seq # | Assoc | End Date | Type | ID | Name |
|---|---|---|---|---|---|
| 3 | | | PLAINTIFF/PETITIONER ATTORNEY | 1007569 | **BREWER, ANTHONY BRYCE** |
| | | | | Aliases: | BREWER, BRYCE BREWER, ANTHONY BRYCE |
| | | | | | |
| 31 | | | DEFENDANT | 14929207 | **GEARHART, G. BROCK** |
| | | | | Aliases: | *none* |
| | | | | | |
| 2 | | | PLAINTIFF | 14895085 | **OWENS, JAMES** |
| | | | | Aliases: | *none* |

EXHIBIT
1

| 4 | | | DEFENDANT | 14895086 | GEARHART, G. BROCK |
|---|---|---|---|---|---|
| | | | | Aliases: | *none* |

| 5 | | | DEFENDANT | 14895087 | GHIRARDELLI, JOHN J. |
|---|---|---|---|---|---|
| | | | | Aliases: | *none* |

| 6 | | | DEFENDANT | 14895088 | HILL, OMON FITZGERALD |
|---|---|---|---|---|---|
| | | | | Aliases: | *none* |

| 7 | | | DEFENDANT | 14895089 | MASSEY, RICHARD N. |
|---|---|---|---|---|---|
| | | | | Aliases: | *none* |

| 8 | | | DEFENDANT | 14895090 | HORTON, DANIEL C. |
|---|---|---|---|---|---|
| | | | | Aliases: | *none* |

| 9 | | | DEFENDANT | 14895091 | MACHEN, J. MATTHEW |
|---|---|---|---|---|---|
| | | | | Aliases: | *none* |

| 10 | | | DEFENDANT | 14895092 | VAUGHAN, IAN R. |
|---|---|---|---|---|---|
| | | | | Aliases: | *none* |

| 11 | | | DEFENDANT | 14895093 | CAVIN, W. DABBS |
|---|---|---|---|---|---|
| | | | | Aliases: | *none* |

| 12 | | | DEFENDANT | 14895094 | BEAR STATE FINANCIAL HOLDINGS, LLC |
|---|---|---|---|---|---|
| | | | | Aliases: | *none* |

| 13 | | | DEFENDANT | 14895095 | CHANGOSE, WILLIAM |
|---|---|---|---|---|---|
| | | | | Aliases: | *none* |

| 14 | | | DEFENDANT | 14895096 | **CLARK, K. AARON** |
| | | | | **Aliases:** | *none* |
| | | | | | |
| 15 | | | DEFENDANT | 14895097 | **CONNER, FRANK** |
| | | | | **Aliases:** | *none* |
| | | | | | |
| 16 | | | DEFENDANT | 14895098 | **FORD, SCOTT T.** |
| | | | | **Aliases:** | *none* |
| | | | | | |
| 17 | | | DEFENDANT | 14929193 | **FORD, SCOTT T.** |
| | | | | **Aliases:** | *none* |
| | | | | | |
| 18 | | | DEFENDANT | 14929194 | **CONNER, FRANK** |
| | | | | **Aliases:** | *none* |
| | | | | | |
| 19 | | | DEFENDANT | 14929195 | **CLARK, K. AARON** |
| | | | | **Aliases:** | *none* |
| | | | | | |
| 20 | | | DEFENDANT | 14929196 | **CHANGOSE, WILLIAM** |
| | | | | **Aliases:** | *none* |
| | | | | | |
| 21 | | | DEFENDANT | 14929197 | **BEAR STATE FINANCIAL HOLDINGS, LLC** |
| | | | | **Aliases:** | *none* |
| | | | | | |
| 22 | | | DEFENDANT | 14929198 | **CAVIN, W. DABBS** |
| | | | | **Aliases:** | *none* |
| | | | | | |
| 23 | | | DEFENDANT | 14929199 | **VAUGHAN, IAN R.** |
| | | | | **Aliases:** | *none* |
| | | | | | |
| 24 | | | DEFENDANT | 14929200 | **MACHEN, J. MATTHEW** |

| | | | | Aliases: | none |
|---|---|---|---|---|---|
| 25 | | | DEFENDANT | 14929201 | **HORTON, DANIEL C.** |
| | | | | Aliases: | none |
| 26 | | | DEFENDANT | 14929202 | **MASSEY, RICHARD N.** |
| | | | | Aliases: | none |
| 27 | | | DEFENDANT | 14929203 | **HILL, OMON FITZGERALD** |
| | | | | Aliases: | none |
| 28 | | | PLAINTIFF | 14929204 | **HURLIMAN, EDWARD** |
| | | | | Aliases: | none |
| 29 | | | PLAINTIFF | 14929205 | **OWENS, JAMES** |
| | | | | Aliases: | none |
| 30 | | | DEFENDANT | 14929206 | **GHIRARDELLI, JOHN J.** |
| | | | | Aliases: | none |
| 1 | | | JUDGE | 7965389 | **HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT** |
| | | | | Aliases: | FOX |

## Violations

## Sentence

No Sentence Info Found.

**Milestone Tracks**

*No Milestone Tracks found.*

**Docket Entries**

| Filing Date | Description | Name | Monetary |
|---|---|---|---|
| 09/11/2017 09:20 AM | AOC COVERSHEET CIVIL | BREWER, ANTHONY BRYCE | |
| **Entry:** | *none.* | | |
| **Images** | No Images | | |
| | | | |
| 09/11/2017 09:20 AM | COMPLAINT/PETITION FILED $ | BREWER, ANTHONY BRYCE | |
| **Entry:** | *none.* | | |
| **Images** | WEB | | |
| | | | |
| 09/11/2017 09:20 AM | SUMMONS ISSUED | BREWER, ANTHONY BRYCE | |
| **Entry:** | *none.* | | |
| **Images** | WEB | | |
| | | | |
| 09/11/2017 09:20 AM | SUMMONS ISSUED | BREWER, ANTHONY BRYCE | |
| **Entry:** | *none.* | | |
| **Images** | WEB | | |
| | | | |
| 09/11/2017 09:20 AM | MOF ORIGINAL | BREWER, ANTHONY BRYCE | |
| **Entry:** | *none.* | | |
| **Images** | No Images | | |

| 09/11/2017 09:35 AM | PAYMENT RECEIVED | | |
|---|---|---|---|
| **Entry:** | A Payment of $165.00 was made on receipt 60CI288025. | | |
| **Images** | No Images | | |

| 09/21/2017 03:52 PM | SUMMONS ISSUED | BREWER, ANTHONY BRYCE | |
|---|---|---|---|
| **Entry:** | *none.* | | |
| **Images** | WEB | | |

| 09/21/2017 03:52 PM | SUMMONS ISSUED | BREWER, ANTHONY BRYCE | |
|---|---|---|---|
| **Entry:** | *none.* | | |
| **Images** | WEB | | |

| 09/21/2017 03:52 PM | SUMMONS ISSUED | BREWER, ANTHONY BRYCE | |
|---|---|---|---|
| **Entry:** | *none.* | | |
| **Images** | WEB | | |

| 09/21/2017 03:52 PM | SUMMONS ISSUED | BREWER, ANTHONY BRYCE | |
|---|---|---|---|
| **Entry:** | *none.* | | |
| **Images** | WEB | | |

| 09/21/2017 03:52 PM | SUMMONS ISSUED | BREWER, ANTHONY BRYCE | |
|---|---|---|---|
| **Entry:** | *none.* | | |
| **Images** | WEB | | |

| | SUMMONS ISSUED | BREWER, ANTHONY BRYCE | |
|---|---|---|---|

| 09/21/2017 03:52 PM | | | |
|---|---|---|---|
| **Entry:** | *none.* | | |
| **Images** | <u>WEB</u> | | |

| 09/21/2017 03:52 PM | SUMMONS ISSUED | BREWER, ANTHONY BRYCE | |
|---|---|---|---|
| **Entry:** | *none.* | | |
| **Images** | <u>WEB</u> | | |

| 09/21/2017 03:52 PM | SUMMONS ISSUED | BREWER, ANTHONY BRYCE | |
|---|---|---|---|
| **Entry:** | *none.* | | |
| **Images** | <u>WEB</u> | | |

| 09/21/2017 03:52 PM | SUMMONS ISSUED | BREWER, ANTHONY BRYCE | |
|---|---|---|---|
| **Entry:** | *none.* | | |
| **Images** | <u>WEB</u> | | |

| 09/21/2017 03:52 PM | SUMMONS ISSUED | BREWER, ANTHONY BRYCE | |
|---|---|---|---|
| **Entry:** | *none.* | | |
| **Images** | <u>WEB</u> | | |

| 09/21/2017 03:52 PM | SUMMONS ISSUED | BREWER, ANTHONY BRYCE | |
|---|---|---|---|
| **Entry:** | *none.* | | |
| **Images** | <u>WEB</u> | | |

| 10/13/2017 02:39 PM | AMENDED COMPLAINT | BREWER, ANTHONY BRYCE | |
|---|---|---|---|

| Entry: | *none.* |
|--------|---------|
| **Images** | <u>WEB</u> |
| | |

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2017-Sep-11  09:20:14
60CV-17-5022
C06D06 : 23 Pages

## IN THE CIRCUIT OF PULASKI COUNTY, ARKANSAS
_____ DIVISION

JAMES OWENS, Individually
And On Behalf Of All Others Similarly Situated                    PLAINTIFF

vs.                          CASE NO. 60CV-17-_____

RICHARD N. MASSEY,
J. MATTHEW MACHEN,
W. DABBS CAVIN,
WILLIAM CHANGOSE,
K. AARON CLARK, FRANK CONNER,
SCOTT T. FORD, G. BROCK GEARHART,
JOHN J. GHIRARDELLI,
OMON FITZGERALD HILL,
DANIEL C. HORTON,
IAN R. VAUGHAN, and
BEAR STATE FINANCIAL HOLDINGS, LLC                    DEFENDANTS

## CLASS ACTION COMPLAINT

James Owens ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including the investigation of counsel and a review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## SUMMARY OF THE ACTION

1.      Plaintiff brings the action individually and on behalf of similarly situated holders of the common stock of Bear State Financial, Inc. ("Bear State" or the "Company"), against the directors and certain officers of Bear State (collectively, the "Individual Defendants" or "Board") for breaching their fiduciary duties in connection with a proposed merger transaction by which Arvest Bank ("Arvest"), through its wholly owned subsidiary Arvest Acquisition Sub, Inc.

("Merger Sub"), will acquire all of the outstanding stock of Bear State for inadequate consideration (the "Proposed Transaction").   Plaintiff also asserts a claim against Richard N. Massey ("Massey"), Bear State's Chairman of the Board, and his affiliated entity Bear State Financial Holdings, LLC ("BSF Holdings" and, together with the Individual Defendants, the "Defendants") for breaching their fiduciary duties in their capacities as controlling shareholders of the Company.

2.      On August 22, 2017, Bear State and Arvest jointly issued a press release announcing that they had entered into a definitive Agreement and Plan of Reorganization ("Merger Agreement") pursuant to which Arvest will acquire Bear State in a transaction valued at approximately $391 million in the aggregate.

3.      On August 25, 2017, Bear State filed a Form 8-K with the SEC wherein it disclosed the terms of the Merger Agreement.   Pursuant to the Merger Agreement, Merger Sub will merge with and into Bear State, with Bear State surviving the merger as a wholly owned subsidiary of Arvest.

4.      According to Bear State's Form 8-K, at the effective time of the merger, each share of Bear State common stock will be converted into the right to receive $10.28 in cash per share (the "Merger Consideration").

5.      Like many financial institutions, Bear State has been making steady progress in recovering from the financial crisis of 2008, before which its stock was trading at more than $50 per share.   By 2014, Bear State had improved its balance sheet, steadily improved its regulatory capital requirements, and improved the quality of its loan portfolio under a more rigorous practice of proactive credit risk management.   As Bear State confirmed in its most recent financial results, the Company's core profitability continues to improve.   Bear State is poised for

strong growth and its solid balance sheet gives the Company an opportunity for further internal expansion and the exploration of acquisition opportunities.

6.      Thus, the Merger Consideration being offered to Bear State's public shareholders in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of Bear State common stock is materially in excess of the Merger Consideration given the Company's recent financial performance and its prospects for future growth and earnings.

7.      Significantly, insiders and affiliates of Bear State own approximately 45.73% of the Company's outstanding common stock.  Individual Defendant Richard N. Massey, Chairman of the Company's Board, has sole voting and dispositive control over approximately 42.35% of the outstanding stock of Bear State.  Individual Defendant Massey's control of these shares primarily derives from his position as the managing member of BSF Holdings, which owns 40.28% of the Company's outstanding common stock.  Bear State director William Changose is a member of and serves as Chief Operating Officer of BSF Holdings. Bear State directors Scott Ford and Dabbs Cavin and certain officers of the Company, including Matt Machen, Sherri Billings, Tom Fritsche, Shelly Loftin, Donna Merriweather, Yurik Paroubek and Paul Lowe are also members of BSF Holdings.  BSF Holdings and Richard N. Massey have each entered into voting agreements with Arvest and agreed to vote in favor of the Proposed Transaction.

8.      In light of Massey's significant stock ownership and position as Chairman of the Board and managing member of BSF Holdings, Massey and BSF Holdings are controlling shareholders of Bear State.  Massey and BSF Holdings owe fiduciary duties to the Company's remaining shareholders in their capacity as controlling shareholders of the Company, which they have breached by agreeing to the Proposed Transaction for the unfair Merger Consideration.

3

Further, because Individual Defendant Massey (who has the sole power to vote and dispose of BSF Holdings' shares in the Company) and the other Individual Defendants who hold leadership positions at BSF Holdings (Messrs. Machen, Changose, Ford, and Cavin) each stand to receive personal, unique financial benefits in connection with the Proposed Transaction, including the accelerated vesting of outstanding restricted stock units ("RSUs"), options, and warrants and/or other significant "change in control" payments, the Proposed Transaction is subject to the exacting entire fairness standard of review, which requires Defendants to establish that the Proposed Transaction was the result of an entirely fair process and resulted in a fair price. As set forth herein, both the Merger Consideration and the process by which the Defendants have agreed to consummate the Proposed Transaction are unfair to the Company's remaining shareholders.

9.     To ensure that the Proposed Transaction is consummated, the Individual Defendants locked up the deal by agreeing to unfair "deal-protection" provisions in the Merger Agreement, effectively rendering the Proposed Transaction a *fait accompli*. For example, the Board agreed to: (i) a "no-shop" provision that prevents the Company from negotiating with or providing confidential Company information to competing bidders except under extremely limited circumstances; (ii) a "matching rights" provision that allows Arvest five (5) business days to match any competing proposal in the unlikely event that one emerges; and (iii) a $14 million termination fee to be paid to Arvest if the Board agrees to accept a competing proposal.

10.     In pursuing the unfair plan to facilitate the acquisition of Bear State by Arvest for grossly inadequate consideration, through a flawed process, each of the Individual Defendants violated applicable law by directly breaching and/or aiding the other Individual Defendants' breaches of their fiduciary duties of loyalty, due care, independence, good faith and fair dealing.

11.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin the consummation of the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of their fiduciary duties of loyalty, good faith and due care.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that is incorporated in this State, or is an individual who is a director of a corporation incorporated State and otherwise has sufficient minimum contacts with Arkansas so as to render the exercise of jurisdiction by the Arkansas courts permissible under traditional notions of fair play and substantial justice.

13.     Venue is proper in this Court because Bear State is headquartered in this County, a substantial portion of the transactions and wrongs complained of herein, including the Defendants' breaches of their fiduciary duties owed to Bear State shareholders, occurred in this County, and Defendants have received substantial compensation in this County by doing business here and engaging in numerous activities that had an effect in this County.

## THE PARTIES & RELEVANT NON-PARTIES

14.     Plaintiff James Owen is, and has been at all times relevant hereto, a shareholder of Bear State.

15.     Individual Defendant Richard N. Massey is Chairman of the Board of Directors of the Company and has been a director since 2011.  Massey previously served as the Company's interim President and Chief Executive Officer.  Through affiliates and directly, Massey owns approximately 42.35% of Bear State's outstanding stock.  More specifically, Massey is the managing member of BSF Holdings, the Company's largest shareholder, which owns

approximately 40.28% of Bear State's outstanding common stock.  Massey has sole voting and dispositive power over the shares of common stock owned by BSF Holding.  Massey has also been a member of Westrock Capital Partner, LLC, since January 2009.  From 2006 to 2009, Massey was Executive Vice President, Chief Strategy Officer and General Counsel of Alltel Corporation.  As a result of his positions at Alltel and Westrock, Massey has had a long-standing relationship with Individual Defendants Ford and Changose.

16.     Individual Defendant J. Matthew Machen ("Machen") is President and Chief Executive Officer of the Company and the Bear State Bank. Machen was appointed as a director of the Company in connection with his promotion on January 18, 2017.  Mr. Machen originally joined Bear State Bank in 2011 as a Senior Vice President. Thereafter, he served as Regional President of Bear State Bank from May 2012 to June 2014, as Executive Vice President and Chief Financial Officer of the Company from June 2014 to April 2016, and as President of Bear State Bank beginning in May 2016.

17.     Individual Defendant W. Dabbs Cavin ("Cavin") is the Vice Chairman of the Board of Directors of the Company and has been a director since 2011. From 2011 until June 30, 2013, Cavin served as Chief Executive Officer of the Company and First Federal Bank (the predecessor to the Bear State Bank).  Cavin is also a member of BSF Holding.

18.     Individual Defendant William Changose ("Changose") has been a director of Bear State since 2017, and also serves as Chief Operating Officer of BSF Holdings. Changose was recommended for service on the Board by Individual Defendant Massey. Changose also currently serves as the Chief Operating Officer of both Westrock Capital Partners, LLC and Westrock Group, LLC and serves as President of Westrock Coffee Roasting, LLC.  Changose originally joined Westrock Capital Partners in 2009.

19.     Individual Defendant K. Aaron Clark ("Clark") has been a director of Bear State since 2011.

20.     Individual Defendant Frank Conner ("Conner") has been a director of Bear State since 2003.

21.     Individual Defendant Scott T. Ford ("Ford") has been a director of Bear State since 2011.  Ford is also a member of BSF Holdings.  Ford is also a member and chief executive officer of Westrock Group, LLC, a private, family-owned commodities trading firm he founded in 2013. Westrock Group operates Westrock Coffee Company, LLC, a coffee exporter, trader, importer and roaster, and Westrock Asset Management, LLC, a global asset management firm. Ford founded Westrock Coffee Company in 2009 and Westrock Asset Management in 2014.  He previously served as President and Chief Executive Officer of Alltel Corporation (a provider of wireless voice and data communications services) from 2002 to 2009, and prior to that, he served as its President and Chief Operating Officer from 1998 to 2002.

22.     Individual Defendant G. Brock Gearhart ("Gearhart") has been a director of Bear State since 2012.

23.     Individual Defendant John J. Ghirardelli ("Ghirardelli") has been a director of Bear State since 2015.

24.     Individual Defendant Omon Fitzgerald Hill ("Hill") has been a director of Bear State since 2011.

25.     Individual Defendant Daniel C. Horton ("Horton") has been a director of Bear State since 2014.

26.     Individual Defendant Ian R. Vaughan ("Vaughan") has been a director of Bear State since 2014.

7

27.     In addition to defendants Massey, Cavin, Changose and Ford, who are each affiliated with BSF Holdings as a managing member or member, certain officers of the Company, including Matt Machen, Sherri Billings, Tom Fritsche, Shelly Loftin, Donna Merriweather, Yurik Paroubek and Paul Lowe are also members of BSF Holdings.

28.     Massey, Machen, Cavin, Changose, Clark, Conner, Ford, Gearhart, Ghirardelli, Hill, Horton and Vaughan are collectively referred to as the "Individual Defendants" or the "Board".

29.     Defendant Bear State Financial Holdings, LLC (referred to herein as BSF Holdings) is the Company's largest shareholder.  As of March 28, 2017, BSF Holdings owned 15,182,463 shares of Company common stock.  This represents approximately 40.28% of the Company's common stock.  As a result of its substantial interest in the Company, BSF Holdings is able to significantly influence the Company's corporate and management policies and the outcome of any corporate transaction or other matter submitted to shareholders for approval.  Individual Defendant Massey, the Chairman of the Board of the Company, is the managing member of BSF Holdings, which provides him with the sole power to vote and dispose of the shares of the Company held by BSF Holdings.  Individual Defendant William Changose is a member of and serves as Chief Operating Officer of BSF Holdings.  Defendants Scott Ford and Dabbs Cavin and certain officers of the Company, including Matt Machen, Sherri Billings, Tom Fritsche, Shelly Loftin, Donna Merriweather, Yurik Paroubek and Paul Lowe are also members of BSF Holdings.  As such, each has an interest in BSF Holdings' investment in the Company to the extent of their individual pecuniary interests in BSF Holdings.  Further, Mr. Fritsche had a preexisting relationship with Arvest, having served as the Executive Vice President and Lending Manger at Arvest Banking Company from 2002 to 2004.

30.     Non-party Bear State is an Arkansas corporation headquartered at 900 South Shackleford Rd, Suite 401, Little Rock, Arkansas.  The Company is a $2.3 billion asset bank holding company.  Its principal subsidiary, Bear State Bank, is a community oriented financial institution providing a broad line of financial products to individuals and business customers. Bear State Bank operates 42 branches, three personalized technology centers equipped with interactive teller machines, and three loan production offices, located throughout Arkansas, Southwest Missouri and Southeast Oklahoma.  Bear State's stock is traded on the NASDAQ stock exchange under the symbol "BSF."

31.     Non-party Arvest is an Arkansas banking corporation and is a financial institution with $16 billion in assets.  Arvest Bank operates more than 250 bank branches in Arkansas, Oklahoma, Missouri, and Kansas through a group of 16 locally managed markets, each with its own local board and management team.  Arvest is headquartered in Fayetteville, Arkansas.

32.     Non-party Merger Sub is an Arkansas corporation formed for the sole purpose of facilitating the consummation of the Proposed Transaction.

**THE DEFENDANTS' FIDUCIARY DUTIES**

33.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Plaintiff and the other shareholders of Bear State and owe Plaintiff and the other members of the Class (defined herein) the duties of good faith, fair dealing, care, loyalty, and candor.

34.     Further, Individual Defendant Massey and BSF Holdings owe the Company's remaining shareholders fiduciary duties of good faith, fair dealing, care, loyalty, and candor in their capacity as controlling shareholders of the Company.

35.     By virtue of their positions as directors, officers, and/or controlling shareholders of Bear State, Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Bear State to engage in the practices complained of herein.

36.     Each of the Defendants is required to act in good faith, in the best interests of the Company's shareholders and with such care, including reasonable inquiry, as would be expected of an ordinarily prudent person.  In a situation where the directors of a publicly traded company undertake a transaction that may result in a change in corporate control, the directors must take all steps reasonably required to maximize the value shareholders will receive rather than use a change of control to benefit themselves, and to disclose all material information concerning the proposed change of control to enable the shareholders to make an informed voting decision.  To diligently comply with this duty, the directors of a corporation may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     contractually prohibits them from complying with or carrying out their fiduciary duties;

(c)     discourages or inhibits alternative offers to purchase control of the corporation or its assets;

(d)     will otherwise adversely affect their duty to search for and secure the best value reasonably available under the circumstances for the corporation's shareholders; or

(e)     will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

37.     Plaintiff alleges herein that the Defendants, separately and together, in connection with the Proposed Transaction, violated duties owed to Plaintiff and the other shareholders of Bear State, including their duties of care, loyalty, good faith and independence, insofar as they,

*inter alia*, engaged in self-dealing and obtained for themselves personal benefits, including personal financial benefits, not shared equally by Plaintiff or the other shareholders of Bear State common stock.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action pursuant to Arkansas Rule of Civil Procedure 23, on behalf of all holders of Bear State common stock who are being and will be harmed by the Defendants' actions described below (the "Class").  Excluded from the Class are the Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

39.     This action is properly maintainable as a class action because:

(a)     The Class is so numerous that joinder of all members is impracticable. According to Bear State's most recent quarterly report on Form 10-Q, as of July 28, 2017, there were approximately 37,713,171 shares of Bear State common stock outstanding.  The actual number of public shareholders of Bear State will be ascertained through discovery;

(b)     There are questions of law and fact which are common to the Class, including *inter alia,* the following:

      i.     whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence, or due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

      ii.     whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the

circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

iii.    whether Massey and BSF Holdings, as controlling shareholders of the Company, breached their fiduciary duties to the Company's remaining shareholders; and

iv.    whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction complained of herein consummated.

(c)    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

(d)    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e)    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f)    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

A.    **Background**

40.    The Company is a $2.24 billion asset bank holding company. Its primary subsidiary is Bear State Bank, which operates 42 branches, three personalized technology centers

equipped with interactive teller machines, and three loan production offices, located throughout Arkansas, Southwest Missouri and Southeast Oklahoma.

41.     Bear State has steadily recovered from the financial crisis of 2008, before which its stock was trading at more than $50 per share. By 2014, Bear State had improved its balance sheet, steadily improved its regulatory capital requirements, and improved the quality of its loan portfolio under a more rigorous practice of proactive credit risk management. As Bear State confirmed in its most recent financial results, the Company's core profitability continues to improve. Bear State is poised for strong growth and its solid balance sheet gives the Company an opportunity for further internal expansion and the exploration of acquisition opportunities.

42.     The Proposed Transaction comes at a time when Bear State's recent and future success has not been fully reflected by its share price. While the Company's per share price was on the rise as a result of its strong growth prospects, the Proposed Transaction will inappropriately cap the growth Bear State shareholders have finally begun to see in their investment.

43.     On April 20, 2017, Bear State released its first quarter financial results for the period ended March 31, 2017 and reported record revenues and improving profitability, asset portfolio, and expense controls. The press release stated in part:

> The company experienced record revenue of $23 million in the first quarter of 2017 which is an increase of 12% compared to the first quarter of 2016. Net interest income increased 11% for the first quarter of 2017 compared to the first quarter of 2016 primarily due to loan portfolio growth. Noninterest income increased 14% for the first quarter of 2017 compared to the first quarter of 2016 primarily due to increases in gain on sale of loans and deposit fee income.
>
> Along with revenue growth, the Company continued to focus on operational efficiency as evidenced by the decrease in noninterest expense of 6% for the first quarter of 2017 compared to the first quarter of 2016, resulting in an improvement in the Company's efficiency ratio to 63% in the first quarter of 2017 compared to 74% in the first quarter of 2016. Further, the Company's core efficiency ratio improved to 56% in the first quarter

of 2017 compared to 72% in the first quarter of 2016. During the first quarter of 2017, the Company consolidated three of its retail branch locations and transitioned one limited service branch location to operate using personalized technology with Interactive ATMs ("ITMs") only. Two additional retail branch locations will transition to operate solely with ITMs in the second quarter of 2017.

44.     On July 27, 2017, Bear State released its second quarter financial results for the period ended June 30, 2017.   The Company reported "record" revenues and improving net income.  The press release stated in part:

> The Company experienced record revenue of $23.4 million in the second quarter of 2017, which is an increase of 12% compared to the second quarter of 2016. Net interest income increased 12% for the second quarter of 2017 compared to the second quarter of 2016 primarily due to loan portfolio growth. Noninterest income increased 9% for the second quarter of 2017 compared to the second quarter of 2016 primarily due to increases in earnings on life insurance and deposit fee income.
>
> Along with revenue growth, the Company continued to focus on operational efficiency as evidenced by the decrease in noninterest expense of 15% for the second quarter of 2017 compared to the second quarter of 2016, resulting in an improvement in the Company's efficiency ratio to 55% in the second quarter of 2017 compared to 72% in the second quarter of 2016. Further, the Company's core efficiency ratio improved to 56% in the second quarter of 2017 compared to 68% in the second quarter of 2016. During the second quarter of 2017, the Company transitioned two branch locations to operate using personalized technology with Interactive ATMs ("ITMs") only.

45.     As reflected by Bear State's recent financial performance, the Merger Consideration undervalues the Company's shares.  As a recent article on investor news website CapitalCube stated: "Bear State Financial, Inc. relative valuation is UNDERVALUED…Bear State Financial, Inc. has shown excellent performance overall, both over the last one year as well as over the last month…The company's year-on-year change in revenues and earnings are better than the median among its peer group." And, according to a recent report by Morningstar, the Company's shares are worth at least $10.49.

46.     Despite Bear State's impressive financial results in recent quarters and its strong growth prospects, Defendants have agreed to sell the Company now and deprive its shareholders

of the ability to partake in the Company's future growth. Defendants breached their fiduciary duties owed to the Company's remaining shareholders by agreeing to the Proposed Transaction for the unfair Merger Consideration.

**B.** **The Proposed Transaction**

47. On August 22, 2017, Bear State and Arvest jointly announced the Proposed Transaction in a press release stating:

> FAYETTEVILLE, Ark. & LITTLE ROCK, Ark.--(BUSINESS WIRE)-- Bear State Financial, Inc. ("Bear State") (NASDAQ:BSF), parent company of Bear State Bank, and Arvest Bank jointly announced today the signing of a definitive agreement for Arvest Bank to acquire Bear State in an all-cash transaction valued at approximately $391 million, or $10.28 per share of Bear State common stock.
>
> The agreement and plan of reorganization was unanimously approved by the boards of directors of each company. The transaction is expected to close in the fourth quarter of 2017 or first quarter of 2018 and is subject to customary conditions, including both regulatory approval and approval by Bear State's shareholders.
>
> Clients of Bear State Bank and Arvest Bank will not notice any immediate changes, and both banks will continue to conduct business as usual. At a later date, Bear State Bank's branding will change to Arvest Bank, with the full conversion of systems expected to occur in 2018.
>
> DD&F Consulting, Inc. served as a consultant to Bear State and Raymond James & Associates, Inc. provided a fairness opinion. Kutak Rock LLP provided legal counsel to Bear State and Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd. and McAfee & Taft PC provided legal counsel to Arvest.

48. Rather than continuing to build upon Bear State's great strides since 2014, the Merger Consideration being offered to Bear State's public shareholders in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of Bear State common stock is materially in excess of the amount offered given the Company's recent financial performance and its prospects for future growth and earnings.

C.    **The Preclusive Deal Protection Devices**

49.    To the detriment of Bear State shareholders, the Individual Defendants agreed, in the Merger Agreement, to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and all but ensure that the Proposed Transaction is consummated and that no competing offers emerge for the Company.

50.    Section 7.4 of the Merger Agreement is a restrictive no-shop provision that prohibits the members of the Board from soliciting proposals relating to alternative offers or business combinations.

51.    The Merger Agreement also includes a strict "standstill" provision which prohibits, except under extremely limited circumstances, the Individual Defendants from engaging in discussions or negotiations relating to proposals regarding alternative acquisitions or business combinations.

52.    Section 7.4(a) of the Merger Agreement requires the Board to provide Arvest with written notice of any Acquisition Proposal within two (2) business days of its receipt.  Further, the Board must provide prior written notice within two (2) business days of its intention to terminate the Merger Agreement in favor of any Superior Proposal and negotiate with Arvest following Arvest's receipt of the notice, so that Arvest has the opportunity within five (5) business day to adjust the terms and conditions of the Merger Agreement so that the Company Acquisition Proposal ceases to be a Superior Proposal.

53.    In addition, the Merger Agreement provides that Bear State must pay Arvest a termination fee of $14 million, representing 3.6% of the approximate deal value of $391 million, if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay an unreasonable premium for the right to provide the Company's

shareholders with a superior offer.  A termination fee in the amount 3.6% is unreasonably high for this type of transaction and strongly discourages any other bidder from coming forward.

54.     Ultimately, these preclusive deal protection devices restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The aggregate effect of these preclusive deal protection devices, viewed in light of the materially inadequate consideration offered for Bear State shares in the Proposed Transaction, supports an inference that the Board was not acting in good faith in approving the terms of the Merger Agreement.

55.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

**D.     Massey and the Other Individual Defendants Affiliated with BSF Holdings Stand to Receive Significant Personal Financial Benefits as a Result of the Proposed Transaction.**

56.     If the Proposed Transaction is consummated, Massey and the other Individual Defendants who have a pecuniary interest in BSF Holdings (Messrs. Machen, Changose, Ford, and Cavin) collectively stand to receive significant personal financial benefits, including "change in control" payments and the accelerated vesting of RSUs, options, and warrants.

57.     Section 3.2 of the Merger Agreement requires the Board to adjust the terms of all outstanding Company RSUs, warrants, and options (whether vested or unvested) to provide that, at the effective time of the Proposed Transaction, each such RSU, warrant, and option shall be cancelled and the holder shall become entitled to receive a single lump sum cash payment in the amount set forth on the Closing Financial Certificate that was prepared in connection with the Merger Agreement.

58.     According to the Company's most recent Definitive Proxy Statement, Individual Defendants Massey, Machen, Changose, Cavin, and Ford each beneficially own Company RSUs, warrants, or options that will be cancelled in exchange for a lump sum cash payment upon the consummation of the Proposed Transaction.   Further, during 2016, all of the Individual Defendants other than those that also serve as officers of the Company or BSF Holdings received an award of 1,100 RSUs that vest in equal annual installments over the course of three years. Such RSUs will be accelerated and paid out as a result of the Proposed Transaction.

59.     Further, according to the Company's most recent Definitive Proxy Statement, Individual Defendant Machen will receive a $500,000 severance payment (which equals two times his current annualized base salary) and $477,886 as a result of the accelerated vesting of his Company equity awards.

60.     In sum, concurrently with negotiating the terms of the Merger Agreement and the value of the Merger Consideration, the Individual Defendants negotiated for and procured unique personal financial benefits for themselves in connection with the Proposed Transaction.   Such conduct constitutes a breach of the Defendants' fiduciary duties, and renders the Proposed Transaction subject to entire fairness review.

61.     Massey has a history of utilizing his control and influence over the Company to personally benefit himself and his affiliated business entities, including Westrock.   Specifically, the Company and Massey jointly owned a Beechcraft Baron aircraft that was purchased in 2014 for a contract price of $775,000.   The Company owned a 75% undivided interest in the aircraft and Mr. Massey owned a 25% undivided interest in the aircraft.   On February 16, 2017, the Company and Mr. Massey sold the aircraft to an unaffiliated third party for $575,000.   Prior to the sale of the aircraft, the Company and Mr. Massey were parties to an Aircraft Management

Agreement with Westrock Aviation, LLC ("Westrock Aviation"), an entity that is owned in part and controlled by Mr. Massey and Individual Defendant Ford. During 2016, the Company paid approximately $172,063 and Mr. Massey paid approximately $41,284 to Westrock Aviation pursuant to the Aircraft Management Agreement. Mr. Massey and Mr. Ford are deemed to have a material interest in the above-described transaction due to their respective ownership of Westrock Aviation. As set forth above, Massey has once again used his control and influence over the Company to extract unique personal financial benefits for himself and his associates.

## FIRST CAUSE OF ACTION

### Claim for Breach of Fiduciary Duties Against the Individual Defendants in Their Capacities as Directors and/or Officers of the Company

62.     Plaintiff repeats and realleges each allegation set forth herein.

63.     The Individual Defendants have breached their fiduciary duties of care, loyalty and good faith owed to the public shareholders of Bear State.

64.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Bear State.

65.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith and independence owed to the shareholders of Bear State because, among other reasons, they: (i) failed to obtain fair consideration for Bear State shareholders in connection with the Proposed Transaction; (ii) agreed to unfair provisions in the Merger Agreement that impede superior bidders from emerging; and (iii) utilized the strategic review and negotiation process to procure unique

personal financial benefits for themselves, to the detriment of the Company's remaining shareholders.

66.     The Individual Defendants dominate and control the business and corporate affairs of Bear State, and are in possession of private corporate information concerning Bear State's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Bear State which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing shareholder value.

67.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class, and have acted in bad faith in facilitating the Proposed Transaction.

68.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Bear State's assets and businesses and have been and will be prevented from obtaining a fair price for their common stock.

69.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

70.     Plaintiff and the members of the Class have no adequate remedy at law.

## SECOND CAUSE OF ACTION

**Claim for Breach of Fiduciary Duties Against Massey and BSF Holdings in their Capacity as Controlling Shareholders of the Company**

71.     Plaintiff repeats and realleges each allegation set forth herein.

72.     Massey and BSF Holdings exercised control over the business and affairs of the Company.  As controlling shareholders of the Company, they owe fiduciary duties of loyalty, care, and good faith to Plaintiff and the Class.

73.     Massey and BSF Holdings breached their fiduciary duties owed to the unaffiliated public shareholders of Bear State.  By the acts, transactions and courses of conduct alleged herein, Massey and BSF Holdings, individually and acting as a part of a common plan, unfairly deprived Plaintiff and the Class of the true value of their investment in Bear State.

74.     As demonstrated by the allegations above, Massey and BSF Holdings failed to exercise the necessary care required, acted in bad faith, and breached their fiduciary duties as controlling stockholders by, among other things:

a.     extracting personal financial benefits for themselves and the other Individual Defendants who have a pecuniary interest in BSF Holdings in connection with the Proposed Transaction, at the expense of the Company's unaffiliated stockholders;

b.     failing to properly value the Company;

c.     failing to take all steps reasonable and necessary to obtain fair consideration for the Company's unaffiliated shareholders;

d.     failing to act independently to protect the interests of the Company's unaffiliated stockholders;

e.     failing to adequately ensure that no conflicts of interest existed between their own interests and their fiduciary obligations;

f.     failing to ensure that all conflicts of interest were resolved in the best interests of Bear State's unaffiliated public stockholders.

75.     Unless Massey and BSF Holdings are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

76.     Plaintiff and the members of the Class have no adequate remedy at law.

## JURY DEMAND

77.     Plaintiff respectfully requests a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against Defendants as follows:

A.     Declaring that this action is properly maintainable as a class action and certifying Plaintiff as class representative;

B.     Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for shareholders;

C.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.     Directing Defendants to account to Plaintiff and the Class for all damages suffered as a result of Defendants' wrongdoing;

E.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.     Granting such other and further equitable relief as this Court may deem just and proper.

Respectfully submitted,

/s/ Bryce Brewer
Bryce Brewer, AR Bar #2002013
Bryce Brewer Law Firm, LLC
800 West 4th Street
North Little Rock, AR  72114
(501) 978-3030 phone
(501) 978-3050 fax
bryce@brycebrewerlaw.com

MONTEVERDE & ASSOCIATES PC
Juan E. Monteverde
350 Fifth Avenue, Suite 4405
New York, NY 10118
Telephone: (212) 971-1341
Fax: (212) 202-7880

ADEMI & O'REILLY, LLP
Guri Ademi
Shpetim Ademi
3620 East Layton Ave.
Cudahy, WI 53110
Telephone: (414) 482-8000
Fax: (414) 482-8001

*Attorneys for Plaintiff*

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT**

JAMES OWENS VS RICHARD N. MASSEY ET AL

60CV-17-5022

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

RICHARD N. MASSEY
900 S. Shackleford. Rd.
Suite 200
Little Rock, AR  72211

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Anthony Brewer
800 West 4th Street
North Little Rock, AR  72114

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:
•Notice of Right to Consent to Disposition of Case by a State District Court Judge

CLERK OF COURT

Address of Clerks Office

LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W. MARKHAM
LITTLE ROCK, AR  72201

LAKETA L GUTIERREZ, DC

Date: 09/11/2017

## NOTICE OF RIGHT TO CONSENT
## TO DISPOSITION OF CASE BY A STATE DISTRICT COURT JUDGE

In accordance with Administrative Order Number 18, you are hereby notified that upon the consent of all the parties in a case, a State District Court Judge may be authorized to conduct all proceedings, including trial of the case and entry of a final judgment. Copies of appropriate consent forms are available from the Circuit Clerk.

You should be aware that your decision to consent or not to consent to the disposition of your case before a State District Court Judge is entirely voluntary, and by consenting to the reference of this matter to a State District Court Judge, the parties waive their right to a jury trial, and any appeal in the case shall be taken directly to the Arkansas Supreme Court or Court of Appeals as authorized by law.

You should communicate your consent by completing the Form -- CONSENT TO PROCEED BEFORE A STATE DISTRICT COURT JUDGE -- and return to the Circuit Clerk.

Circuit Clerk
Date: 09/11/2017

No. 60CV-17-5022 This summons is for RICHARD N. MASSEY (name of Defendant).

## PROOF OF SERVICE

❏ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❏ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❏ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❏ I delivered the summons and complaint to _____[name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❏ Other [specify]:

_____

❏ I was unable to execute service because:

_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____       SHERIFF OF _____ COUNTY, ARKANSAS

                            By: _____
                            [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____     By: _____
                          [Signature of server]


                          _____
                          [Printed name]

Address: _____
         _____

Phone: _____

Subscribed and sworn to before me this date: _____


                          _____
                          Notary Public

My commission expires: _____

Additional information regarding service or attempted service:
_____
_____

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT

### JAMES OWENS VS RICHARD N. MASSEY ET AL

60CV-17-5022

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

BEAR STATE FINANCIAL HOLDINGS, LLC
c/o Richard N. Massey
Suite 200
Little Rock, AR  72211

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Anthony Brewer
800 West 4th Street
North Little Rock, AR  72114

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:
•Notice of Right to Consent to Disposition of Case by a State District Court Judge

CLERK OF COURT

Address of Clerks Office

LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W. MARKHAM
LITTLE ROCK, AR  72201

LAKETA L GUTIERREZ, DC

Date: 09/11/2017

## NOTICE OF RIGHT TO CONSENT
## TO DISPOSITION OF CASE BY A STATE DISTRICT COURT JUDGE

In accordance with Administrative Order Number 18, you are hereby notified that upon the consent of all the parties in a case, a State District Court Judge may be authorized to conduct all proceedings, including trial of the case and entry of a final judgment. Copies of appropriate consent forms are available from the Circuit Clerk.

You should be aware that your decision to consent or not to consent to the disposition of your case before a State District Court Judge is entirely voluntary, and by consenting to the reference of this matter to a State District Court Judge, the parties waive their right to a jury trial, and any appeal in the case shall be taken directly to the Arkansas Supreme Court or Court of Appeals as authorized by law.

You should communicate your consent by completing the Form -- CONSENT TO PROCEED BEFORE A STATE DISTRICT COURT JUDGE -- and return to the Circuit Clerk.

Circuit Clerk
Date: 09/11/2017

No. 60CV-17-5022 This summons is for BEAR STATE FINANCIAL HOLDINGS, LLC (name of Defendant).

PROOF OF SERVICE

❑ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date]; or

❑ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❑ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14 years of age who resides there, on _____[date]; or

❑ I delivered the summons and complaint to _____[name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

❑ Other [specify]:

_____

❑ I was unable to execute service because:

_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____         SHERIFF OF _____ COUNTY, ARKANSAS

                              By: _____
                              [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____        By: _____
                            [Signature of server]


                            _____
                            [Printed name]


Address: _____
         _____

Phone: _____

Subscribed and sworn to before me this date: _____


                            _____
                            Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____
_____

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT**

<u>JAMES OWENS VS RICHARD N. MASSEY ET AL</u>

60CV-17-5022

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

DANIEL C. HORTON
UNKNOWN
UNKNOWN, UN  00000

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Anthony Brewer
800 West 4th Street
North Little Rock, AR  72114

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:


CLERK OF COURT

Address of Clerks Office

LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W. MARKHAM
LITTLE ROCK, AR  72201

LCLERK Mary Ann Neppl, DC

Date: 09/22/2017

No. 60CV-17-5022 This summons is for DANIEL C. HORTON (name of Defendant).

## PROOF OF SERVICE

❏ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❏ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❏ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❏ I delivered the summons and complaint to _____[name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❏ Other [specify]:

_____

❏ I was unable to execute service because:

_____
_____

My fee is $ ____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____      SHERIFF OF _____ COUNTY, ARKANSAS

                          By: _____
                          [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____          By: _____
                                [Signature of server]


                                _____

                                [Printed name]

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date: _____


_____

Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT**

JAMES OWENS VS RICHARD N. MASSEY ET AL

60CV-17-5022

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

FRANK  CONNER
UNKNOWN
UNKNOWN, UN  00000

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Anthony Brewer
800 West 4th Street
North Little Rock, AR  72114

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

CLERK OF COURT

Address of Clerks Office

LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W. MARKHAM
LITTLE ROCK, AR  72201

LCLERK Mary Ann Neppl, DC

Date: 09/22/2017

No. 60CV-17-5022 This summons is for FRANK  CONNER (name of Defendant).

## PROOF OF SERVICE

❑ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❑ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❑ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❑ I delivered the summons and complaint to _____[name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❑ Other [specify]:
_____

❑ I was unable to execute service because:
_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____       SHERIFF OF _____ COUNTY, ARKANSAS

                             By: _____
                             [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____     By: _____
                          [Signature of server]


                          _____
                          [Printed name]

Address: _____
         _____

Phone: _____

Subscribed and sworn to before me this date: _____


                          _____
                          Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT

JAMES OWENS VS RICHARD N. MASSEY ET AL

60CV-17-5022

### SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

G. BROCK GEARHART
UNKNOWN
UNKNOWN, UN  00000

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Anthony Brewer
800 West 4th Street
North Little Rock, AR  72114

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:


CLERK OF COURT

Address of Clerks Office

LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W. MARKHAM
LITTLE ROCK, AR  72201

LCLERK Mary Ann Neppl, DC

Date: 09/22/2017

No. 60CV-17-5022 This summons is for G. BROCK GEARHART (name of Defendant).

## PROOF OF SERVICE

❑ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❑ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❑ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❑ I delivered the summons and complaint to _____[name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❑ Other [specify]:
_____

❑ I was unable to execute service because:
_____
_____

My fee is $ ____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____      SHERIFF OF _____ COUNTY, ARKANSAS

                            By: _____
                            [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____          By: _____
                               [Signature of server]


_____
                               [Printed name]

Address: _____
         _____

Phone: _____

Subscribed and sworn to before me this date: _____


_____
Notary Public

My commission expires: _____

Additional information regarding service or attempted service:
_____
_____

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT

JAMES OWENS VS RICHARD N. MASSEY ET AL

60CV-17-5022

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

IAN R. VAUGHAN
UNKNOWN
UNKNOWN, UN  00000

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Anthony Brewer
800 West 4th Street
North Little Rock, AR  72114

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

CLERK OF COURT

Address of Clerks Office

LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W. MARKHAM
LITTLE ROCK, AR  72201

LCLERK Mary Ann Neppl, DC

Date: 09/22/2017

No. 60CV-17-5022 This summons is for IAN R. VAUGHAN (name of Defendant).

# PROOF OF SERVICE

❏ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❏ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❏ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❏ I delivered the summons and complaint to _____[name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❏ Other [specify]:

_____

❏ I was unable to execute service because:

_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____     SHERIFF OF _____ COUNTY, ARKANSAS

                          By: _____
                          [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____     By: _____
                          [Signature of server]


                          _____
                          [Printed name]

Address: _____
         _____

Phone: _____

Subscribed and sworn to before me this date: _____


                          _____
                          Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____
_____

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT

JAMES OWENS VS RICHARD N. MASSEY ET AL

60CV-17-5022

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

J. MATTHEW MACHEN
UNKNOWN
UNKNOWN, UN  00000

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Anthony Brewer
800 West 4th Street
North Little Rock, AR  72114

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:


CLERK OF COURT

Address of Clerks Office

LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W. MARKHAM
LITTLE ROCK, AR  72201

*M Neppl*

LCLERK Mary Ann Neppl, DC

Date: 09/22/2017

No. 60CV-17-5022 This summons is for J. MATTHEW MACHEN (name of Defendant).

## PROOF OF SERVICE

❑ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❑ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❑ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❑ I delivered the summons and complaint to _____[name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❑ Other [specify]:

_____

❑ I was unable to execute service because:

_____
_____

My fee is $ ____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____      SHERIFF OF _____ COUNTY, ARKANSAS

                           By: _____
                           [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____          By: _____
                               [Signature of server]


                               _____
                               [Printed name]

Address: _____
         _____

Phone: _____

Subscribed and sworn to before me this date: _____


                               _____
                               Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____
_____

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT

JAMES OWENS VS RICHARD N. MASSEY ET AL

60CV-17-5022

### SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

JOHN J. GHIRARDELLI
UNKNOWN
UNKNOWN, UN  00000

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Anthony Brewer
800 West 4th Street
North Little Rock, AR  72114

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

CLERK OF COURT

Address of Clerks Office

LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W. MARKHAM
LITTLE ROCK, AR  72201

LCLERK Mary Ann Neppl, DC

Date: 09/22/2017

No. 60CV-17-5022 This summons is for JOHN J. GHIRARDELLI (name of Defendant).

PROOF OF SERVICE

❏ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❏ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❏ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❏ I delivered the summons and complaint to _____[name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❏ Other [specify]:
_____

❏ I was unable to execute service because:
_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____      SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____        By: _____
                             [Signature of server]


                             _____
                             [Printed name]

Address: _____
         _____

Phone: _____

Subscribed and sworn to before me this date: _____


                             _____
                             Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____
_____

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT

JAMES OWENS VS RICHARD N. MASSEY ET AL

60CV-17-5022

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

K. AARON CLARK
UNKNOWN
UNKNOWN, UN  00000

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Anthony Brewer
800 West 4th Street
North Little Rock, AR  72114

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

CLERK OF COURT

Address of Clerks Office

LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W. MARKHAM
LITTLE ROCK, AR  72201

LCLERK Mary Ann Neppl, DC

Date: 09/22/2017

No. 60CV-17-5022 This summons is for K. AARON CLARK (name of Defendant).

## PROOF OF SERVICE

❏ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❏ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❏ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❏ I delivered the summons and complaint to _____[name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❏ Other [specify]:
_____

❏ I was unable to execute service because:
_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____     SHERIFF OF _____ COUNTY, ARKANSAS

                           By: _____
                           [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____        By: _____
                            [Signature of server]


                            _____
                            [Printed name]

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date: _____


                            _____
                            Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT

JAMES OWENS VS RICHARD N. MASSEY ET AL

60CV-17-5022

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

OMON FITZGERALD HILL
UNKNOWN
UNKNOWN, UN  00000

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Anthony Brewer
800 West 4th Street
North Little Rock, AR  72114

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

CLERK OF COURT

Address of Clerks Office

LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W. MARKHAM
LITTLE ROCK, AR  72201

LCLERK Mary Ann Neppl, DC

Date: 09/22/2017

No. 60CV-17-5022 This summons is for OMON FITZGERALD HILL (name of Defendant).

PROOF OF SERVICE

❏ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❏ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❏ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❏ I delivered the summons and complaint to _____[name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❏ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❏ Other [specify]:
_____

❏ I was unable to execute service because:
_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____      SHERIFF OF _____ COUNTY, ARKANSAS

                            By: _____
                            [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____        By: _____
                             [Signature of server]


                             _____
                             [Printed name]

Address: _____
         _____

Phone: _____

Subscribed and sworn to before me this date: _____


                             _____
                             Notary Public

My commission expires: _____

Additional information regarding service or attempted service:
_____
_____

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT

JAMES OWENS VS RICHARD N. MASSEY ET AL

60CV-17-5022

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

SCOTT T. FORD
UNKNOWN
UNKNOWN, UN  00000

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Anthony Brewer
800 West 4th Street
North Little Rock, AR  72114

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

CLERK OF COURT

Address of Clerks Office

LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W. MARKHAM
LITTLE ROCK, AR  72201

*M Neppl*

LCLERK Mary Ann Neppl, DC

Date: 09/22/2017

No. 60CV-17-5022 This summons is for SCOTT T. FORD (name of Defendant).

## PROOF OF SERVICE

❑ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❑ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❑ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❑ I delivered the summons and complaint to _____[name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❑ Other [specify]:

_____

❑ I was unable to execute service because:

_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____        SHERIFF OF _____ COUNTY, ARKANSAS

                              By: _____
                              [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____          By: _____
                              [Signature of server]


                              _____
                              [Printed name]

Address: _____
          _____

Phone: _____

Subscribed and sworn to before me this date: _____


                              _____
                              Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____
_____

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT

JAMES OWENS VS RICHARD N. MASSEY ET AL

60CV-17-5022

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

W. DABBS CAVIN
UNKNOWN
UNKNOWN, UN  00000

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Anthony Brewer
800 West 4th Street
North Little Rock, AR  72114

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

Address of Clerks Office

LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W. MARKHAM
LITTLE ROCK, AR  72201

CLERK OF COURT

*M Neppl*

LCLERK Mary Ann Neppl, DC

Date: 09/22/2017

No. 60CV-17-5022 This summons is for W. DABBS CAVIN (name of Defendant).

## PROOF OF SERVICE

❑ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❑ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❑ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❑ I delivered the summons and complaint to _____[name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❑ Other [specify]:
_____

❑ I was unable to execute service because:
_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____     SHERIFF OF _____ COUNTY, ARKANSAS

                          By: _____
                          [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____     By: _____
[Signature of server]


_____
[Printed name]

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date: _____


_____
Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT

JAMES OWENS VS RICHARD N. MASSEY ET AL

60CV-17-5022

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

WILLIAM  CHANGOSE
UNKNOWN
UNKNOWN, UN  00000

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Anthony Brewer
800 West 4th Street
North Little Rock, AR  72114

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

CLERK OF COURT

Address of Clerks Office

LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W. MARKHAM
LITTLE ROCK, AR  72201

*M Neppl*

LCLERK Mary Ann Neppl, DC

Date: 09/22/2017

No. 60CV-17-5022 This summons is for WILLIAM  CHANGOSE (name of Defendant).

PROOF OF SERVICE

❑ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date];
or

❑ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❑ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14
years of age who resides there, on _____[date]; or

❑ I delivered the summons and complaint to _____[name of individual], an agent
authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons
and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as
shown by the attached signed return receipt.

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the
summons and complaint by first-class mail to the defendant together with two copies of a notice and
acknowledgment and received the attached notice and acknowledgment form within twenty days after
the date of mailing.

❑ Other [specify]:
_____

❑ I was unable to execute service because:
_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

                               By: _____
                               [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____     By: _____
                          [Signature of server]


                          _____
                          [Printed name]

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date: _____


                          _____
                          Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2017-Oct-13 14:39:19
60CV-17-5022
C06D06 : 43 Pages

## IN THE CIRCUIT OF PULASKI COUNTY, ARKANSAS
## 6th DIVISION

JAMES OWENS and EDWARD HURLIMAN, Individually
And On Behalf Of All Others Similarly Situated                    **PLAINTIFFS**

vs.                          CASE NO. 60CV-17-5022

RICHARD N. MASSEY,
J. MATTHEW MACHEN,
W. DABBS CAVIN,
WILLIAM CHANGOSE,
K. AARON CLARK,
FRANK CONNER,
SCOTT T. FORD,
G. BROCK GEARHART,
JOHN J. GHIRARDELLI,
OMON FITZGERALD HILL,
DANIEL C. HORTON,
IAN R. VAUGHAN, and
BEAR STATE FINANCIAL HOLDINGS, LLC                    **DEFENDANTS**

## AMENDED CLASS ACTION COMPLAINT

James Owens and Edward Hurliman ("Plaintiffs"), by and through their attorneys, allege

the following upon information and belief, including the investigation of counsel and a review of

publicly-available information, except as to those allegations pertaining to Plaintiffs, which are

alleged upon personal knowledge:

## SUMMARY OF THE ACTION

1.      Plaintiffs bring this action individually and on behalf of similarly situated holders

of the common stock of Bear State Financial, Inc. ("Bear State" or the "Company"), against the

directors and certain officers of Bear State (collectively, the "Individual Defendants" or "Board")

for breaching their fiduciary duties in connection with a proposed merger transaction by which

Arvest Bank ("Arvest"), through its wholly owned subsidiary Arvest Acquisition Sub, Inc.

("Merger Sub"), will acquire all of the outstanding stock of Bear State for inadequate

consideration (the "Proposed Transaction").   Plaintiffs also assert a claim against Richard N. Massey ("Massey"), Bear State's Chairman of the Board, and his affiliated entity Bear State Financial Holdings, LLC ("BSF Holdings" and, together with the Individual Defendants, the "Defendants") for breaching their fiduciary duties in their capacities as controlling shareholders of the Company.

2.     On August 22, 2017, Bear State and Arvest jointly issued a press release announcing that they had entered into a definitive Agreement and Plan of Reorganization ("Merger Agreement") pursuant to which Arvest will acquire Bear State for $10.28 per share in cash ("Merger Consideration") in a transaction valued at approximately $391 million in the aggregate.  Pursuant to the Merger Agreement, Merger Sub will merge with and into Bear State, with Bear State surviving the merger as a wholly owned subsidiary of Arvest.

3.     The Proposed Transaction is the result of a fundamentally flawed and unfair sales process that was led by Defendant Massey.   The remaining Individual Defendants wholly abdicated their fiduciary obligations to the Company's public shareholders by giving Massey virtually complete control over the strategic review process.   Massey utilized his significant authority to push through a deal with Arvest after orchestrating a completely inadequate strategic review process, during which he and the rest of the Board failed to properly pursue and ultimately rejected an all-stock offer from another interested bidder that had an implied value of up to $10.95 per share, *$0.67 more than Arvest's offer*.  Massey and the remaining Defendants failed to seriously pursue this alternative offer because the consideration was in the form of stock and Massey was only interested in all-cash offers, which will enable him to quickly liquidate his otherwise illiquid holdings in Bear State.  Further, the bidder that made the alternative offer, referred to in Bear State's Definitive Proxy Statement as "Company A", refused to commit to

appointing any of the Individual Defendants to the board of the post-merger combined company, which caused Defendants to further disfavor a transaction with Company A even though such a deal was in the best interests of the Company's public shareholders.

4.     Bear State has made steady progress in recovering from the financial crisis of 2008, before which its stock was trading at more than $50 per share.  By 2014, Bear State had improved its balance sheet, steadily improved its regulatory capital requirements, and improved the quality of its loan portfolio under a more rigorous practice of proactive credit risk management.  As Bear State confirmed in its most recent financial results, the Company's core profitability continues to improve.  Bear State is poised for strong growth, and its solid balance sheet gives the Company an opportunity for further internal expansion and the exploration of acquisition opportunities.

5.     Thus, the Merger Consideration being offered to Bear State's public shareholders in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of Bear State common stock is materially in excess of the Merger Consideration given the Company's recent financial performance and its prospects for future growth and earnings.  Indeed, certain valuation analyses indicate the Company is worth as much as $15.21 per share.

6.     Significantly, insiders and affiliates of Bear State own approximately 45.73% of the Company's outstanding common stock.  Individual Defendant Richard N. Massey, Chairman of the Company's Board, has sole voting and dispositive control over approximately 42.35% of the outstanding stock of Bear State.  Individual Defendant Massey's control of these shares primarily derives from his position as the managing member of BSF Holdings, the corporate entity controlled by Massey that holds the shares.  Bear State director William Changose is a

member of and serves as Chief Operating Officer of BSF Holdings. Bear State directors Scott Ford and Dabbs Cavin and certain officers of the Company, including Matt Machen, Sherri Billings, Tom Fritsche, Shelly Loftin, Donna Merriweather, Yurik Paroubek and Paul Lowe are also members of BSF Holdings. BSF Holdings and Richard N. Massey have each entered into voting agreements with Arvest and agreed to vote in favor of the Proposed Transaction. As the managing member of BSF Holdings with sole voting and dispositive power over the shares of common stock owned by BSF Holdings, Mr. Massey is deemed to be the beneficial owner of all shares of common stock owned by BSF Holdings.

7.      In light of Massey's significant stock ownership and position as Chairman of the Board and managing member of BSF Holdings, Massey and BSF Holdings are controlling shareholders of Bear State. Massey and BSF Holdings owe fiduciary duties to the Company's remaining shareholders in their capacity as controlling shareholders of the Company, which they have breached by agreeing to the Proposed Transaction for the unfair Merger Consideration because it enables them to liquidate their otherwise illiquid holdings. Further, because Individual Defendant Massey (who has the sole power to vote and dispose of BSF Holdings' shares in the Company) and the other Individual Defendants who hold leadership positions at BSF Holdings (Messrs. Machen, Changose, Ford, and Cavin) each stand to receive personal, unique financial benefits in connection with the Proposed Transaction, including the accelerated vesting of outstanding restricted stock units ("RSUs"), options, and warrants and/or other significant "change in control" payments, the Proposed Transaction is subject to the exacting entire fairness standard of review, which requires Defendants to establish that the Proposed Transaction was the result of an entirely fair process and resulted in a fair price. As set forth

herein, both the Merger Consideration and the process by which the Defendants have agreed to consummate the Proposed Transaction are unfair to the Company's remaining shareholders.

8. To ensure that the Proposed Transaction is consummated, the Individual Defendants locked up the deal by agreeing to unfair "deal-protection" provisions in the Merger Agreement, effectively rendering the Proposed Transaction a *fait accompli*. For example, the Board agreed to: (i) a "no-shop" provision that prevents the Company from negotiating with or providing confidential Company information to competing bidders except under extremely limited circumstances; (ii) a "matching rights" provision that allows Arvest five (5) business days to match any competing proposal in the unlikely event that one emerges; (iii) a $14 million termination fee to be paid to Arvest if the Board agrees to accept a competing proposal; and (iv) a hard "force-the-vote" provision, which requires a shareholder vote on the Proposed Transaction to go forward even if a superior offer is received. These provisions unfairly impede the Company's public shareholders from receiving a superior offer.

9. In pursuing the unfair plan to facilitate the acquisition of Bear State by Arvest for grossly inadequate consideration, through a flawed process, each of the Defendants violated applicable law by directly breaching and/or aiding the other Defendants' breaches of their fiduciary duties of loyalty, due care, independence, good faith, fair dealing and candor.

10. For these reasons and as set forth in detail herein, Plaintiffs seek to enjoin the consummation of the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of their fiduciary duties of loyalty, good faith, due care and candor.

**JURISDICTION AND VENUE**

11.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that is incorporated in this State, or is an individual who is a director of a corporation incorporated State and otherwise has sufficient minimum contacts with Arkansas so as to render the exercise of jurisdiction by the Arkansas courts permissible under traditional notions of fair play and substantial justice.

12.     Venue is proper in this Court because Bear State is headquartered in this County, a substantial portion of the transactions and wrongs complained of herein, including the Defendants' breaches of their fiduciary duties owed to Bear State shareholders, occurred in this County, and Defendants have received substantial compensation in this County by doing business here and engaging in numerous activities that had an effect in this County.

**THE PARTIES & RELEVANT NON-PARTIES**

13.     Plaintiffs James Owen and Edward Hurliman are, and have been at all times relevant hereto, shareholders of Bear State.

14.     Individual Defendant Richard N. Massey is Chairman of the Board of Directors of the Company and has been a director since 2011.  Massey previously served as the Company's interim President and Chief Executive Officer.  Through affiliates and directly, Massey owns approximately 42.35% of Bear State's outstanding stock.  More specifically, Massey is the managing member of BSF Holdings, the corporate entity that holds the Company's shares. Massey has sole voting and dispositive power over the shares of common stock held by BSF Holdings.  Massey has also been a member of Westrock Capital Partner, LLC, since January 2009.  From 2006 to 2009, Massey was Executive Vice President, Chief Strategy Officer and General Counsel of Alltel Corporation.  As a result of his positions at Alltel and Westrock,

Massey has had a long-standing relationship with Individual Defendants Ford and Changose. Prior to joining Alltel, Mr. Massey acted as Managing Director of Stephens Inc., a private investment bank, for 6 years. Individual Defendant Clark is a Managing Director of the Stephens Group, LLC.

15.     Individual Defendant J. Matthew Machen ("Machen") is President and Chief Executive Officer of the Company and the Bear State Bank. Machen was appointed as a director of the Company in connection with his promotion on January 18, 2017. Mr. Machen originally joined Bear State Bank in 2011 as a Senior Vice President. Thereafter, he served as Regional President of Bear State Bank from May 2012 to June 2014, as Executive Vice President and Chief Financial Officer of the Company from June 2014 to April 2016, and as President of Bear State Bank beginning in May 2016.

16.     Individual Defendant W. Dabbs Cavin ("Cavin") is the Vice Chairman of the Board of Directors and has been a director since 2011. From 2011 until June 30, 2013, Cavin served as Chief Executive Officer of the Company and First Federal Bank (the predecessor to Bear State Bank). Cavin is also a member of BSF Holdings.

17.     Individual Defendant William Changose ("Changose") has been a director of Bear State since 2017, and also serves as Chief Operating Officer of BSF Holdings. Changose was recommended for service on the Board by Individual Defendant Massey. Changose also currently serves as the Chief Operating Officer of both Westrock Capital Partners, LLC and Westrock Group, LLC and serves as President of Westrock Coffee Roasting, LLC. Changose originally joined Westrock Capital Partners in 2009.

18.     Individual Defendant K. Aaron Clark ("Clark") has been a director of Bear State since 2011. Clark currently serves as a Managing Director of The Stephens Group, LLC, a

7

private, family-owned investment firm, which he joined in 2006.  According to its website, the Stephens Group has a "partnership" with Bear State Financial.

19.      Individual Defendant Frank Conner ("Conner") has been a director of Bear State since 2003.

20.      Individual Defendant Scott T. Ford ("Ford") has been a director of Bear State since 2011.  Ford is also a member of BSF Holdings.  Ford is also a member and chief executive officer of Westrock Group, LLC, a private, family-owned commodities trading firm he founded in 2013. Westrock Group operates Westrock Coffee Company, LLC, a coffee exporter, trader, importer and roaster, and Westrock Asset Management, LLC, a global asset management firm. Ford founded Westrock Coffee Company in 2009 and Westrock Asset Management in 2014.  He previously served as President and Chief Executive Officer of Alltel Corporation (a provider of wireless voice and data communications services) from 2002 to 2009, and prior to that, he served as its President and Chief Operating Officer from 1998 to 2002.

21.      Individual Defendant G. Brock Gearhart ("Gearhart") has been a director of Bear State since 2012.

22.      Individual Defendant John J. Ghirardelli ("Ghirardelli") has been a director of Bear State since 2015.

23.      Individual Defendant Omon Fitzgerald Hill ("Hill") has been a director of Bear State since 2011.

24.      Individual Defendant Daniel C. Horton ("Horton") has been a director of Bear State since 2014.

25.      Individual Defendant Ian R. Vaughan ("Vaughan") has been a director of Bear State since 2014.

26.   In addition to defendants Massey, Machen, Cavin, Changose and Ford, who are each affiliated with BSF Holdings as a managing member or member, certain officers of the Company, including Sherri Billings, Tom Fritsche, Shelly Loftin, Donna Merriweather, Yurik Paroubek and Paul Lowe, are also members of BSF Holdings.  As such, each of these individual has a pecuniary interest in BSF Holdings.

27.   Massey, Machen, Cavin, Changose, Clark, Conner, Ford, Gearhart, Ghirardelli, Hill, Horton and Vaughan are collectively referred to as the "Individual Defendants" or the "Board".

28.   Defendant Bear State Financial Holdings, LLC (referred to herein as BSF Holdings) is the corporate entity that holds the Company's shares controlled by Massey.  BSF Holdings holds approximately 15,980,261 shares of Company common stock.  This represents approximately 42.31% of the Company's outstanding common stock.   As a result of its substantial interest in the Company, BSF Holdings (*i.e.*, Massey) is able to significantly influence the Company's corporate and management policies and the outcome of any corporate transaction or other matter submitted to shareholders for approval.   Individual Defendant Massey, the Chairman of the Board of the Company, is the managing member of BSF Holdings, which provides him with the sole power to vote and dispose of the shares of the Company held by BSF Holdings.  Individual Defendant William Changose is a member of and serves as Chief Operating Officer of BSF Holdings.  Defendants Scott Ford and Dabbs Cavin and certain officers of the Company, including Matt Machen, Sherri Billings, Tom Fritsche, Shelly Loftin, Donna Merriweather, Yurik Paroubek and Paul Lowe are also members of BSF Holdings.  As such, each has an interest in BSF Holdings' investment in the Company to the extent of their individual pecuniary interests in BSF Holdings.   Further, Mr. Fritsche had a preexisting

relationship with Arvest, having served as the Executive Vice President and Lending Manger at Arvest Banking Company from 2002 to 2004.

29.     Non-party Bear State is an Arkansas corporation headquartered at 900 South Shackleford Rd, Suite 401, Little Rock, Arkansas.  The Company is a $2.3 billion asset bank holding company.  Its principal subsidiary, Bear State Bank, is a community oriented financial institution providing a broad line of financial products to individuals and business customers. Bear State Bank operates 42 branches, three personalized technology centers equipped with interactive teller machines, and three loan production offices, located throughout Arkansas, Southwest Missouri and Southeast Oklahoma.  Bear State's stock is traded on the NASDAQ stock exchange under the symbol "BSF."

30.     Non-party Arvest is an Arkansas banking corporation and is a financial institution with $16 billion in assets.  Arvest Bank operates more than 250 bank branches in Arkansas, Oklahoma, Missouri, and Kansas through a group of 16 locally managed markets, each with its own local board and management team.  Arvest is headquartered in Fayetteville, Arkansas.

31.     Non-party Merger Sub is an Arkansas corporation formed for the sole purpose of facilitating the consummation of the Proposed Transaction.

## THE DEFENDANTS' FIDUCIARY DUTIES

32.     Pursuant to Ark. Code Ann. § 4-27-830, § 4-27-842, and common law, and by reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Plaintiffs and the other shareholders of Bear State and owe Plaintiffs and the other members of the Class (defined herein) the duties of good faith, fair dealing, care, loyalty, and candor.

33.     Further, Individual Defendant Massey and BSF Holdings owe the Company's remaining shareholders fiduciary duties of good faith, fair dealing, care, loyalty, and candor in their capacity as controlling shareholders of the Company.

34.     By virtue of their positions as directors, officers, and/or controlling shareholders of Bear State, Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Bear State to engage in the practices complained of herein.

35.     Each of the Defendants is required to act in good faith, in the best interests of the Company's shareholders and with such care, including reasonable inquiry, as would be expected of an ordinarily prudent person.  In a situation where the directors of a publicly traded company undertake a transaction that may result in a change in corporate control, the directors must take all steps reasonably required to maximize the value shareholders will receive rather than use a change of control to benefit themselves, and to disclose all material information concerning the proposed change of control to enable the shareholders to make an informed voting decision.  To diligently comply with this duty, the directors of a corporation may not take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     contractually prohibits them from complying with or carrying out their fiduciary duties;

(c)     discourages or inhibits alternative offers to purchase control of the corporation or its assets;

(d)     will otherwise adversely affect their duty to search for and secure the best value reasonably available under the circumstances for the corporation's shareholders; or

(e)     will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

36.     The Board's fiduciary obligation to maximize shareholder value also required it to reject inadequate offers to purchase the Company and to maintain the Company's operations as a standalone entity if the alternative was a sale at an inadequate price.  Defendants were obligated to seek the path offering the best value reasonably available to the shareholders, which could be remaining independent and not engaging in any transaction at all.

37.     Further, when directors and officers agree to a transaction that requires shareholder approval, they have a duty to disclose all information that is material to the shareholders' consideration of the transaction that can reasonably be obtained through their position as directors and officers.

38.     Plaintiffs allege herein that the Defendants, separately and together, in connection with the Proposed Transaction, violated duties owed to Plaintiffs and the Class, including their duties of care, loyalty, good faith and independence, insofar as they, *inter alia*, engaged in self-dealing and obtained for themselves personal benefits, including personal financial benefits, not shared equally by Plaintiffs or the Class.

## CLASS ACTION ALLEGATIONS

39.     Plaintiffs bring this action pursuant to Arkansas Rule of Civil Procedure 23, on behalf of all holders of Bear State common stock who are being and will be harmed by the Defendants' actions described below (the "Class").  Excluded from the Class are the Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

40.     This action is properly maintainable as a class action because:

(a)     The Class is so numerous that joinder of all members is impracticable. According to Bear State's most recent quarterly report on Form 10-Q, as of July 28, 2017, there were approximately 37,713,171 shares of Bear State common stock

outstanding.  The actual number of public shareholders of Bear State will be ascertained through discovery;

(b)    There are questions of law and fact which are common to the Class, including *inter alia,* the following:

i.    whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence, due care or candor with respect to Plaintiffs and the other members of the Class in connection with the Proposed Transaction;

ii.    whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiffs and the other members of the Class in connection with the Proposed Transaction;

iii.    whether Massey and BSF Holdings, as controlling shareholders of the Company, breached their fiduciary duties to the Company's remaining shareholders; and

iv.    whether Plaintiffs and the other members of the Class would suffer irreparable injury and/or damages were the Proposed Transaction complained of herein consummated.

(c)    Plaintiffs are adequate representatives of the Class, have retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

(d)    Plaintiffs' claims are typical of the claims of the other members of the Class and Plaintiffs do not have any interests adverse to the Class;

(e)     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

(f)     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

(g)     A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**A.    The Merger Consideration is Inadequate in Light of Bear State's Strong Financial Performance and Growth Prospects.**

41.    The Company is a $2.24 billion asset bank holding company. Its primary subsidiary is Bear State Bank, which operates 42 branches, three personalized technology centers equipped with interactive teller machines, and three loan production offices, located throughout Arkansas, Southwest Missouri and Southeast Oklahoma.

42.    Bear State has steadily recovered from the financial crisis of 2008, before which its stock was trading at more than $50 per share.  By 2014, Bear State had improved its balance sheet, steadily improved its regulatory capital requirements, and improved the quality of its loan portfolio under a more rigorous practice of proactive credit risk management.  As Bear State confirmed in its most recent financial results, the Company's core profitability continues to improve.  Bear State is poised for strong growth and its solid balance sheet gives the Company an opportunity for further internal expansion and the exploration of acquisition opportunities.

43.     The Proposed Transaction comes at a time when Bear State's recent and future success has not been fully reflected by its share price. While the Company's per share price was on the rise as a result of its strong growth prospects, the Proposed Transaction will inappropriately cap the growth Bear State shareholders have finally begun to see in their investment, and will deprive the Company's shareholders from partaking in the Company's future growth prospects and upside.

44.     On April 20, 2017, Bear State released its first quarter financial results for the period ended March 31, 2017 and reported record revenues and improving profitability, asset portfolio, and expense controls.  The press release stated in part:

> The company experienced record revenue of $23 million in the first quarter of 2017 which is an increase of 12% compared to the first quarter of 2016. Net interest income increased 11% for the first quarter of 2017 compared to the first quarter of 2016 primarily due to loan portfolio growth. Noninterest income increased 14% for the first quarter of 2017 compared to the first quarter of 2016 primarily due to increases in gain on sale of loans and deposit fee income.

> Along with revenue growth, the Company continued to focus on operational efficiency as evidenced by the decrease in noninterest expense of 6% for the first quarter of 2017 compared to the first quarter of 2016, resulting in an improvement in the Company's efficiency ratio to 63% in the first quarter of 2017 compared to 74% in the first quarter of 2016. Further, the Company's core efficiency ratio improved to 56% in the first quarter of 2017 compared to 72% in the first quarter of 2016. During the first quarter of 2017, the Company consolidated three of its retail branch locations and transitioned one limited service branch location to operate using personalized technology with Interactive ATMs ("ITMs") only. Two additional retail branch locations will transition to operate solely with ITMs in the second quarter of 2017.

45.     On July 27, 2017, Bear State released its second quarter financial results for the period ended June 30, 2017.  The Company reported "record" revenues and improving net income.  The press release stated in part:

> The Company experienced record revenue of $23.4 million in the second quarter of 2017, which is an increase of 12% compared to the second quarter of 2016. Net interest income increased 12% for the second quarter of 2017 compared to the second quarter of 2016 primarily due to loan portfolio growth. Noninterest income increased 9% for the second quarter of 2017 compared to the second quarter of 2016 primarily due to increases in earnings on life insurance and deposit fee income.
>
> Along with revenue growth, the Company continued to focus on operational efficiency as evidenced by the decrease in noninterest expense of 15% for the second quarter of 2017 compared to the second quarter of 2016, resulting in an improvement in the Company's efficiency ratio to 55% in the second quarter of 2017 compared to 72% in the second quarter of 2016. Further, the Company's core efficiency ratio improved to 56% in the second quarter of 2017 compared to 68% in the second quarter of 2016. During the second quarter of 2017, the Company transitioned two branch locations to operate using personalized technology with Interactive ATMs ("ITMs") only.

46.     As reflected by Bear State's recent financial performance, the Merger Consideration undervalues the Company's shares.  As a recent article on investor news website CapitalCube stated: "Bear State Financial, Inc. relative valuation is UNDERVALUED...Bear State Financial, Inc. has shown excellent performance overall, both over the last one year as well as over the last month...The company's year-on-year change in revenues and earnings are better than the median among its peer group." Further, according to a recent report by Morningstar, the Company's shares are worth at least $10.49, and certain valuation analyses indicate the Company is worth as much as $15.21 per share.

47.     Despite Bear State's impressive financial results in recent quarters and its strong growth prospects, Defendants have agreed to sell the Company now and deprive its shareholders

of the ability to partake in the Company's future growth.  Defendants breached their fiduciary duties owed to the Company's remaining shareholders by agreeing to the Proposed Transaction for the unfair Merger Consideration in order to advance their own personal financial interests.

**B.      The Flawed and Conflicted Sales Process Failed to Maximize Shareholder Value.**

48.      Rather than continuing to build upon Bear State's great strides since 2014, the Merger Consideration being offered to Bear State's public shareholders in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of Bear State common stock is materially in excess of the amount offered given the Company's recent financial performance and its prospects for future growth and earnings.

49.      Massey's push to liquidate his shares via an all-cash merger commenced in March 2017, when Randy Dennis ("Dennis") of DD&F Consulting Group, Inc. ("DD&F"), a bank consulting firm, approached Mr. Massey about specifically selling the Company to Arvest. Based on the Proxy Statement, it does not appear that Dennis discussed selling the Company to any party other than Arvest during his initial conversation with Massey.  Dennis asked for Massey's permission to approach Arvest and inquire as to their interest in a potential strategic transaction.  Without the express authority of the full Board, Mr. Massey authorized Mr. Dennis, acting on behalf of Bear State, to contact representatives of Arvest to gauge their interest in a potential transaction with Bear State.

50.      Acting pursuant to Mr. Massey's authorization, on or about March 13, 2017, Mr. Dennis spoke with the Chairman of the board of directors of Arvest, about a potential transaction between Arvest and Bear State. The Arvest Chairman indicated that Arvest might be interested in a potential transaction, but it could not engage in serious discussions at that particular time. Around that time, Bob Kelly, chief risk officer of Arvest, began to conduct a preliminary due diligence investigation of Bear State by reviewing publicly available information about Bear

17

State. Mr. Dennis discussed the issue further with Arvest on several occasions over the following weeks.

51.     In mid-April, Mr. Kelly requested certain non-public information about Bear State from Mr. Dennis, as Arvest began to show interest in a potential transaction. Subsequently, the Arvest Chairman and Rick Chapman, vice president of Arvest's parent holding companies Arvest Bank Group, Inc. and Arvest Holdings, Inc., agreed to a meeting with Mr. Massey and Mr. Dennis.

52.     On June 13, 2017, Messrs. Massey and Dennis met in Bentonville, Arkansas with the Arvest chairman and Mr. Chapman, and the Arvest representatives expressed a desire to acquire Bear State *in an all-cash transaction*.    At the meeting, Mr. Dennis distributed information to the parties concerning valuations in recent financial institutions transactions with target companies comparable in size and geographic location to Bear State and its markets, and Mr. Massey provided input regarding valuation as well.  It is unclear if Massey informed the rest of the Board of his meeting with Arvest beforehand.

53.     On June 22, 2017, Mr. Chapman contacted Mr. Massey and proposed a transaction, subject to formal due diligence and the negotiation of a definitive transaction agreement, whereby Arvest would acquire Bear State in an all-cash transaction valued at $10.53 per share.

54.     On June 26, 2017, the Board *finally* held a special meeting at which Mr. Massey informed the rest of the Board of the Arvest proposal.  In other words, Massey had been involved in negotiations with Arvest regarding a proposed merger for approximately three months before a Board meeting was finally held to discuss the issue.  A representative of DD&F was also present at the meeting.  The Board discussed the Arvest proposal.  Following the discussion, the

Board delegated to Mr. Massey and senior management responsibility for continuing discussions with Arvest and entering into a confidentiality agreement with Arvest, and agreed to allow Arvest to conduct a due diligence review of Bear State. Despite being fully aware of Massey's and managements conflicts of interest, the Board declined to form an independent special transaction committee to review strategic transactions and alternatives.   Indeed, the Board ignored the blatant conflict of interest Massey faced via his control of and affiliation with BSF Holdings, the very same conflict which had been noted by the Board a mere three months earlier in the Company's 10-K, which specifically stated *"Bear State Financial Holdings, LLC holds a significant interest in the Company's common stock and may have interests that differ from the interests of other shareholders...The interests of BSF Holdings may differ from those of the Company's other shareholders, and it may take actions that advance its interests to the detriment of other shareholders."*[1]  The Board also formally engaged DD&F, the consulting firm that had initiated discussions between Massey and Arvest back in March, as a consultant to assist in the performance of a so-called "market check" and to provide other consulting services in connection with a potential transaction.  In other words, the Board agreed to retain a consultant that appeared set on finalizing a deal with Arvest as its primary outside advisor to assess the interest of other potential bidders.  Mr. Massey discussed the need to obtain a "fairness opinion", which corporate boards obtain primarily to attempt to insulate themselves from liability in connection with unfair merger transactions[2].  The Board delegated Massey with sole authority

---

[1]  Bear State Financial, Inc., Form 10-K Annual Report (March 10, 2017), available at https://www.sec.gov/Archives/edgar/data/1006424/000143774917004279/bsf20161231_10k.htm

[2]  The flaws of "fairness opinions" have been noted by legal scholars and the judiciary for decades.  Bankers will find any transaction "fair" so long as a board is willing to pay their fees. *See, e.g.,* Lucian Arye Bebchuk & Marcel Kahan, *Fairness Opinions: How Fair Are They and What Can Be Done About It?*, 1989 Duke L.J. 27, 30 (Feb. 1989) ("discretion enables investment banks to act opportunistically. Investment bankers can formulate fairness opinions serving their

for selecting the investment bank that would provide a fairness opinion.  Bear State and Arvest entered into a confidentiality agreement on June 26, 2017, the very same day that the Board first learned of Arvest's proposal.

55.     On June 29, 2017, Messrs. Massey and Cavin met with representatives of DD&F including Mr. Dennis, purportedly to develop a market check process and a list of potential acquirers whose interest in a potential transaction would be solicited.  The discussion resulted in a list of only six financial institutions to contact, several of which Messrs. Massey and/or Cavin had had prior discussions with about a potential transaction.  In other words, Massey had already had discussions with other interested bidders, apparently without the knowledge or authority of the full Board.  Massey and the other individuals involved elected not to reach out to any financial buyers, and thereby excluded a significant number of potentially interested bidders from the half-hearted "market check" process.

56.     Beginning on July 5, 2017, representatives of DD&F engaged in discussions with each of the six financial institutions about a potential transaction with Bear State, informing them that expressions of interest in a potential business combination transaction with Bear State should be submitted by July 21, 2017.   Massey and DD&F elected to give other potential bidders a mere sixteen days to complete due diligence and submit a bid, despite the fact that

---

and the managers' interests, rather than ones reflecting their best judgments of fair price. . . investment banks have strong incentives to write opinions that satisfy the managers who hire them and negotiate their fees."); Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1562 (Aug. 2006) ("[C]urrent fairness opinion practice is still deeply flawed. [They] are frequently prepared utilizing methodologies that simply do not jibe with best practices."); *In re New York Stock Exch./Archipelago Merger Litig.*, 824 N.Y.S.2d 764, 2005 NY Slip Op 52308(U), at *13 (N.Y. Sup. Ct. 2005) ("Fairness opinions have recently come under attack, with good reason…Conflicts between the board and financial experts who issue fairness opinions have become the norm instead of the exception…Fairness opinions have become watered down and toothless…It is problematic to this court that only a positive fairness opinion can be rendered.").

Arvest had a three-month head start on the process. This unreasonably short bid deadline further indicates that Massey and DD&F were eager to finalize a deal with their preferred suitor, Arvest.

57.     Despite the unreasonably short time frame, a publicly-traded financial institution, referred to in the Proxy Statement as "Company A", submitted a proposal on July 20, 2017. Company A's proposal contemplated an acquisition of Bear State by Company A in a *stock-for-stock* merger involving a fixed exchange ratio, subject to modification if the volume weighted average price of Company A's common stock at closing (VWAP) fell outside a specified cap and collar. The cap ensured that the value of the consideration would not fall below a specified level, and the high end of the implied valuation of Company A's offer was *$10.95 per share, $0.42 higher than Arvest's offer*. Further, in the event the VWAP was below the threshold collar price, Company A's proposal gave Bear State the right to terminate the transaction. In other words, the downside risk of Company A's proposal was minimal. Despite the superiority of Company A's offer, Massey and the other Defendants had a fundamental problem with it – the consideration offered was in the form of *stock rather than cash*, which would prevent Massey/BSF Holdings from liquidating their shares.

58.     Company A had requested that Massey and the Board respond to its proposal by July 28, 2017. On July 27, 2017, Mr. Dennis asked Company A to extend Bear State's response deadline to August 4, 2017. While the Board delayed its response to Company A, its advisors were busy working to finalize the Merger Agreement with Arvest. Specifically, between July 14th and July 26th, counsel for Bear State and Arvest exchanged drafts of the Merger Agreement. The revisions sent by Bear State's counsel on July 26th indicated that Mr. Massey and BSF Holdings were willing to enter into a voting agreement that would contractually require them to support a deal with Arvest. Defendants' decision to delay responding to Company A

while simultaneously working to finalize the Merger Agreement with Arvest indicates that Defendants had no interest in seriously pursuing a transaction with Company A, despite the fact that the value of its offer had the potential to meaningfully exceed Arvest's offer.

59.     In assessing Company A's offer at a July 26th Board meeting, the *Individual Defendants specifically expressed concern about the liquidity of the Company A shares they would receive in a transaction with Company A.*  Simply put, Massey wanted cash for his shares and had no interest in a transaction involving stock consideration, and the remaining Defendants were willing to rubber-stamp whatever transaction Massey wanted.  The Individual Defendants deemed Arvest's all-cash proposal to be "superior" to Company A's proposal, *despite the fact that Arvest had not even committed to a final offer price yet* (and would ultimately reduce its offer price to $10.28).  At the same meeting, Massey informed the rest of the Board that he had finalized his selection of the Company's financial advisor to provide a fairness opinion, Raymond James & Associates, Inc. ("Raymond James").  Following the Board meeting, Massey formally engaged Raymond James.

60.     As noted above, on July 27, 2017, Mr. Dennis requested an extension of the response deadline for the Company A proposal until August 4, 2017.  On July 31, 2017, Mr. Dennis pushed Company A to modify its proposal *to add cash consideration* (the only form of consideration Massey and the remaining Defendants would accept) and to guarantee that at least some of the Individual Defendants would have seats on the combined company's board.  In other words, Mr. Dennis pushed Company A to provide the unique personal financial benefits that Defendants demanded in order to move forward with a transaction.  While Company A stated that it may be willing to add some cash consideration, it did not suggest an amount or a range, and further stated that it would not guarantee seats on the board to any of the Individual

Defendants.  In other words, Company A refused to commit to providing the personal financial benefits that the Individual Defendants had demanded.

61.     Recognizing that Company A was unwilling to guarantee the Defendants the liquidity and post-merger board seats they demanded, Defendants ceased communications with Company A as of July 31, 2017 and worked to finalize a deal with Arvest rather than seriously pursuing Company A's higher-value proposal.

62.     During the weeks of July 24, July 31, and August 7 and thereafter, Arvest, together with its legal advisers, continued its business, legal and financial due diligence of Bear State and the parties continued to negotiate a definitive merger agreement.  On August 2, 2017, Kutak Rock LLP ("Kutak Rock"), legal counsel to Bear State, delivered an initial draft of the disclosure schedules to the merger agreement to Arvest's counsel ("Hilburn").  On August 7, 2017, Hilburn delivered a revised draft of the merger agreement to Kutak Rock, reflecting continued negotiation of the representations and warranties, pre-closing operating covenants and closing conditions as well as the addition of a provision that Bear State would not submit a third-party proposal to a vote of the Bear State shareholders prior to submission of the Arvest proposal to a vote of the Bear State shareholders (a "force-the-vote" provision).  On August 9, 2017, Kutak Rock delivered a subsequent markup of the merger agreement to Hilburn, requesting a list of persons that Arvest would require to enter into a restrictive covenant agreement.

63.     On August 11, 2017, the board of directors of each of Bear State and Bear State Bank met in a joint special meeting.  At the invitation of the Board, representatives of Kutak Rock, DD&F and Raymond James were in attendance.  Prior to the meeting, among other things, copies of the draft merger agreement (including the related ancillary documents such as the form of voting agreement), presentations prepared by each of Kutak Rock and Raymond James, and

proposed board resolutions were made available to the directors. At the meeting, the Board ratified the prior engagement of Raymond James. In discussing the Arvest proposal, Mr. Massey summarized his recent discussions with representatives of Arvest, noting that they were attempting to complete their due diligence review by August 10. During his discussions with Arvest, Mr. Massey had requested Arvest's confirmation of the $10.53 per share transaction price, but the Arvest representatives would not commit to the price. Mr. Massey concluded that the discussion could signal a potential price reduction in the Arvest proposal; nevertheless, Defendants declined to reengage with Company A, and were content to accept whatever all-cash offer Arvest ultimately submitted, which wound up being a reduced offer of $10.28 per share. Massey and the remaining Defendants did not care that Arvest was likely to reduce its offer price, because an all-cash transaction was the only acceptable transaction to them. At the same meeting, Bear State's legal advisor provided a summary of the latest draft of the merger agreement, including a summary of the various "deal protection" provisions that would significantly impede superior offers from emerging. While Arvest had insisted on a particularly aggressive deal-protection device referred to as a hard "force-the-vote" provision, which requires the Board to submit Arvest's proposal to a vote by the Company's' shareholders even if a superior offer were to emerge, the Individual Defendants apparently did not care about the detrimental effect such provisions would have, *i.e.*, impeding superior offers from emerging. Massey and the remaining Defendants were content to take Arvest's cash offer and move on. Thereafter, representatives of Raymond James provided their preliminary valuation analysis of Bear State and financial analysis of Arvest's initial $10.53 proposal, together with a draft fairness opinion. Following these discussions, the Individual Defendants unanimously and

preliminarily approved the Arvest proposal, despite knowing that it was likely going to be reduced.

64.     On August 18, 2017, Arvest officially informed Defendants that it would be decreasing the value of its proposal to $10.28 per share.   Nevertheless, the Defendants were content to finalize a transaction with Arvest at the reduced price, and did not even bother attempting to reengage with Company A.   the Individual Defendants instructed their legal counsel to continue working to finalize the terms of the Merger Agreement.

65.     On August 21, 2017, the board of directors of each of Bear State and Bear State Bank reconvened in a special meeting to evaluate the significantly reduced Arvest proposal. Mr. Massey informed the Board of the decrease in purchase price of the Arvest proposal, as well as his further discussions and negotiations with Arvest representatives.   Mr. Massey also requested that representatives of Raymond James summarize Raymond James' revised financial analysis. While the Proxy indicates that Raymond James needed to "revise" its financial analysis in light of Arvest's reduced offer, it fails to provide any meaningful explanation regarding the specific revisions that were made.   In discussing the fairness opinion, the Individual Defendants and Raymond James discussed the fact that the Merger Consideration of $10.28 per share was below the 25th percentile of the implied transaction metrics for the trailing twelve months EPS and next twelve months forecasted EPS of both the regional and national selected transactions.   In other words, the Individual Defendants were fully aware that Arvest's revised offer price was well-below average as compared to similar transactions.   Each of the Individual Defendants was nevertheless still willing to go along with what Massey wanted, and unanimously agreed to approve a merger with Arvest even at the reduced offer price.

66.     Prior to the commencement of trading the following morning, August 22, 2017, Bear State and Arvest entered into the Merger Agreement and Bear State issued a press release announcing the Proposed Transaction.   Concurrently with the execution of the Merger Agreement, Mr. Massey and BSF Holdings entered into voting agreements with Arvest, agreeing to support the Proposed Transaction that Massey had eagerly sought, which will enable Massey to liquidate his significant holdings in the Company but is fundamentally unfair to the Company's remaining public shareholders.

67.     In sum, the Proposed Transaction is the result of a fundamentally flawed and inadequate sales process that was plagued by conflicts of interest and was orchestrated to end in only one possible outcome – an all-cash sale of the Company to Arvest.   Massey and the remaining Defendants forced through a sale of the Company on terms that are grossly unfair to the Company's remaining public shareholders, but which personally benefit them.

**C.      Massey and the Other Defendants Stand to Receive Significant Personal Financial Benefits as a Result of the Proposed Transaction.**

68.     Massey, via his control of BSF Holdings, is indisputably the Company's controlling shareholder.  As set forth in the Company's most recent Annual Report on Form 10-K:

> **Bear State Financial Holdings, LLC holds a significant interest in the Company's common stock and may have interests that differ from the interests of other shareholders.**
>
> Bear State Financial Holdings, LLC ("BSF Holdings") currently owns approximately 40% of the outstanding shares of Company common stock. *As a result, BSF Holdings is able to significantly influence corporate and management policies and the outcome of any corporate transaction or other matter submitted to Company shareholders for approval. Such transactions may include mergers and acquisitions, sales of all or some of the Company's assets or purchases of assets, and other significant corporate transactions.*

*The interests of BSF Holdings may differ from those of the Company's other shareholders, and it may take actions that advance its interests to the detriment of other shareholders.*

This concentration of ownership could also have the effect of delaying, deferring or preventing a change in control or impeding a merger or consolidation, takeover or other business combination that could be favorable to the other holders of the Company's common stock, and the market price of the Company's common stock may be adversely affected by the absence or reduction of a takeover premium in the trading price.

69.     Further, as noted above, Massey exhibited significant control over the strategic review and negotiation process, as the remaining Individual Defendants abdicated their fiduciary obligations by delegating virtually complete authority over the process to Massey.

70.     Massey has been described as a "corporate raider"[3] – a financier who makes a practice of making hostile takeover bids for companies, primarily to resell them for a profit within a relatively short or finite period of time.  As described in articles on investor news websites *Forbes* and *Seeking Alpha*, Bear State was formed as a result of Massey's takeover and reorganization of First Federal Bank of Harrison.  Specifically, on May 3, 2011, Bear State Financial Holdings made a $46.3 million investment to recapitalize First Federal Bank.  Massey led the Bear State group, which brought a new management team to the bank.  And in June 2014, First Federal Bancshares of Arkansas, Inc. changed its name to Bear State Financial Inc.  As the *Seeking Alpha* article states, "it's clear [this] was a one man takeover by Massey."

71.     As a result of Massey's leadership role with Bear State and significant share ownership, the remaining Individual Defendants were beholden to Massey for their lucrative positions with the Company as directors and/or officers.  Indeed, in light of his control over

---

[3] Ken Kam, *Bear State Financial Has Little Rock's Movers And Shakers On Board*, FORBES (Dec. 29, 2016), https://www.forbes.com/sites/kenkam/2016/12/29/bear-state-financial-has-little-rocks-movers-and-shakers-on-board/#3599e46568d8; Bruce Pile, *From the Makers of Wal-Mart And Bank Of The Ozarks Comes Bear State Bank*, SEEKING ALPHA (Jan. 2, 2017), https://seekingalpha.com/article/4033780-makers-wal-mart-bank-ozarks-comes-bear-state-bank.

approximately 42.31% of the Company's outstanding common shares, Massey effectively controlled the election of directors, and, for all practical purposes, had the power to remove any director who did not support his agenda.  Further, as noted above, Massey has long-standing relationships with several of the other Individual Defendants, including Changose, Ford, and Clark.

72.    Like a traditional hedge fund investor, Massey sought to cash out on his investment in Bear State approximately five years after his corporate takeover began.  Massey thus led a fundamentally flawed strategic review process, which failed to maximize the value received by the Company's remaining shareholders, in order to procure for himself a unique personal financial benefit - the prompt liquidation of his otherwise illiquid block of Bear State common stock.  As noted in the Company's 10-K:

> The trading volume of the Company's common stock is lower than that of other financial services companies and the market price of our common stock may fluctuate significantly, *which can make it difficult to sell shares of the Company's common stock at times, volumes and prices attractive to our shareholders.  The average daily trading volume for shares of our common stock is lower than larger financial institutions.  Because the trading volume of our common stock is lower, and thus has substantially less liquidity than the average trading market for many other publicly traded companies, sales of our common stock may place significant downward pressure on the market price of our common stock.  In addition, market value of thinly traded stocks can be more volatile than stocks trading in an active public market.*

73.    In other words, Massey could not promptly liquidate his large block of shares via the public trading market.  Thus, the only way for him to liquidate his shares was via an all-cash merger.  This caused Massey to steer the sales process towards Arvest's all-cash offer, despite the fact that an all-stock offer with a higher maximum value was on the table.  The remaining Defendants simply rubber-stamped the deal that Massey preferred, and failed to adequately

pursue Company A's alternative offer, because it would not have enabled Massey to liquidate his shares and because Company A refused to guarantee any of the Individual Defendants a seat on the board of the combined company.

74.     Liquidity is recognized as a benefit that may lead directors to breach their fiduciary duties. Although all of Bear State's shareholders will receive cash as a result of the Proposed Transaction, *liquidity* was a benefit unique to Massey.  Massey's interest in a prompt liquidation event conflicted with those of common shareholders who, unlike Massey, could sell their shares into the market. Massey's desire to gain liquidity for himself and BSF Holdings caused him to manipulate the sales process, and quickly finalize a transaction with Arvest because it made an all-cash offer, while Company A had offered consideration in the form of stock.

75.     If the Proposed Transaction is consummated, Massey and the other Individual Defendants who have a pecuniary interest in BSF Holdings (Messrs. Machen, Changose, Ford, and Cavin) also collectively stand to receive significant personal financial benefits, including "change in control" payments and the accelerated vesting of RSUs, options, and warrants.

76.     Section 3.2 of the Merger Agreement requires the Board to adjust the terms of all outstanding Company RSUs, warrants, and options (whether vested or unvested) to provide that, at the effective time of the Proposed Transaction, each such RSU, warrant, and option shall be cancelled and the holder shall become entitled to receive a single lump sum cash payment in the amount set forth on the Closing Financial Certificate that was prepared in connection with the Merger Agreement.

77.     According to the Company's most recent Definitive Proxy Statement, Individual Defendants Massey, Machen, Changose, Cavin, and Ford each beneficially own Company RSUs,

warrants, or options that will be cancelled in exchange for a lump sum cash payment upon the consummation of the Proposed Transaction. Further, during 2016, all of the Individual Defendants other than those that also serve as officers of the Company or BSF Holdings received an award of 1,100 RSUs that vest in equal annual installments over the course of three years. Such RSUs will be accelerated and paid out as a result of the Proposed Transaction.

78.     Individual Defendants Massey and Ford each own warrants to purchase 39,381 shares of Bear State common stock. In accordance with the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, these warrants will be cancelled and automatically converted into the right to receive a cash amount equal to the aggregate number of shares of Bear State common stock subject to such warrant multiplied by the difference of $10.28 and the exercise price of such warrants.

79.     Further, according to the Proxy Statement, Individual Defendant Machen will receive a $650,000 "change-in-control" severance payment (which equals two times his current annualized base salary). The Company's remaining executive officers also stand to receive significant "change-in-control" payments they would not have received but for the Proposed Transaction, as set forth in the following table:

| Name | Severance Payment ($)(1) |
|---|---|
| Matt Machen | 650,000 |
| Sherri Billings | 500,000 |
| Tom Fritsche | 700,000 |
| Shelly Loftin | 450,000 |
| Paul Lowe | 275,000 |
| Chad Rawls | 215,000 |
| Yurik Paroubek | 190,000 |
| Donna Merriweather | 180,250 |

80.     As set forth in the table below, each of the remaining Individual Defendants (aside from Mr. Changose) will also receive accelerated cash payments they otherwise would not have received as a result of the Proposed Transaction:

| Name | Number of Restricted Stock Units | Accelerated Payment Amount ($) |
|---|---|---|
| Richard N. Massey | 1,590 | 16,345 |
| W. Dabbs Cavin | 2,479 | 25,484 |
| William Champose | 0 | 0 |
| K. Aaron Clark | 1,590 | 16,345 |
| Frank Conner | 1,590 | 16,345 |
| Scott T. Ford | 1,590 | 16,345 |
| G. Brock Gearhart | 1,590 | 16,345 |
| John J. Ghirardelli | 734 | 7,546 |
| O. Fitzgerald Hill | 1,590 | 16,345 |
| Daniel C. Horton | 2,479 | 25,484 |
| Ian R. Vaughan | 1,590 | 16,345 |

81.     Additionally, the Proxy notes that "following the consummation of the merger, it is expected that the members of Bear State's senior management team may continue as employees of Arvest or its affiliates." Proxy 46. Thus, it appears that Individual Defendant Machen and/or other executive officers of the Company have procured continued employment for themselves with Arvest.

82.     In sum, concurrently with negotiating the terms of the Merger Agreement and the value of the Merger Consideration, the Individual Defendants negotiated for and procured unique personal financial benefits for themselves in connection with the Proposed Transaction. Such conduct constitutes a breach of the Defendants' fiduciary duties, and renders the Proposed Transaction subject to entire fairness review.

83.     Massey has a history of utilizing his control and influence over the Company to personally benefit himself and his affiliated business entities, including Westrock. Specifically, the Company and Massey jointly owned a Beechcraft Baron aircraft that was purchased in 2014 for a contract price of $775,000. The Company owned a 75% undivided interest in the aircraft and Mr. Massey owned a 25% undivided interest in the aircraft. On February 16, 2017, the Company and Mr. Massey sold the aircraft to an unaffiliated third party for $575,000. Prior to the sale of the aircraft, the Company and Mr. Massey were parties to an Aircraft Management Agreement with Westrock Aviation, LLC ("Westrock Aviation"), an entity that is owned in part

31

and controlled by Mr. Massey and Individual Defendant Ford.  During 2016, the Company paid approximately $172,063 and Mr. Massey paid approximately $41,284 to Westrock Aviation pursuant to the Aircraft Management Agreement.  Mr. Massey and Mr. Ford are deemed to have a material interest in the above-described transaction due to their respective ownership of Westrock Aviation.  As set forth above, Massey has once again used his control and influence over the Company to extract unique personal financial benefits for himself and his associates.

D.     **The Merger Agreement's Deal Protection Provisions Impede Superior Offers From Emerging.**

84.     To the detriment of Plaintiffs and the Class, the Individual Defendants agreed to certain onerous and preclusive deal protection devices in the Merger Agreement that operate conjunctively to all but ensure that the Proposed Transaction is consummated and that no competing offers emerge for the Company.

85.     Section 7.4 of the Merger Agreement is a restrictive no-shop provision that prohibits the members of the Board from soliciting proposals relating to alternative offers or business combinations.

86.     The Merger Agreement also includes a strict "standstill" provision which prohibits, except under extremely limited circumstances, the Individual Defendants from engaging in discussions or negotiations relating to proposals regarding alternative acquisitions or business combinations.

87.     Section 7.4(a) of the Merger Agreement requires the Board to provide Arvest with written notice of any Acquisition Proposal within two (2) business days of its receipt.  Further, the Board must provide prior written notice within two (2) business days of its intention to terminate the Merger Agreement in favor of any Superior Proposal and negotiate with Arvest following Arvest's receipt of the notice, so that Arvest has the opportunity within five (5)

business day to adjust the terms and conditions of the Merger Agreement so that the Company Acquisition Proposal ceases to be a Superior Proposal.

88.     In addition, the Merger Agreement provides that Bear State must pay Arvest a termination fee of $14 million, representing 3.6% of the approximate deal value of $391 million, if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay an unreasonable premium for the right to provide the Company's shareholders with a superior offer. A termination fee in the amount 3.6% is unreasonably high for this type of transaction and strongly discourages any other bidder from coming forward.

89.     Additionally, the Individual Defendants agreed to a hard "force-the-vote" provision, which requires a shareholder vote on the Proposed Transaction to go forward even if a superior offer is received. This provision is coercive, as it forces a vote to go forward on the inadequate and unfair Proposed Transaction.

90.     Ultimately, these preclusive deal protection devices restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The aggregate effect of these preclusive deal protection devices, viewed in light of the materially inadequate consideration offered for Bear State shares in the Proposed Transaction, supports an inference that the Board was not acting in good faith in approving the terms of the Merger Agreement.

91.     Further, the Individual Defendants failed to fulfill their fiduciary obligations to Plaintiffs and the Class by declining to include a "majority of the minority" provision in the Merger Agreement, which is routinely utilized in connection with mergers involving companies that have controlling shareholders. Such a provision would have required that a majority of Bear State's public shareholders *other than Massey and BSF Holdings* vote to approve the Proposed

Transaction before it could be consummated.  Defendants likely recognized that such a provision

would result in the Proposed Transaction being voted down by the Company's public

shareholders, and therefore failed to ensure that such a provision was included in the Merger

Agreement.  As a result of this failure and the Voting Agreement entered into by Massey and

BSF Holdings, the Proposed Transaction is a *fait accompli*, as 42.31% of the Company's shares

are contractually obligated to vote for the deal, and only 8% more are needed for it to go

forward.

92.      Accordingly, Plaintiffs seek injunctive and other equitable relief to prevent the

irreparable injury that the Company's shareholders will continue to suffer absent judicial

intervention or, in the event the Proposed Transaction is consummated, to recover damages

incurred as a result of Defendants' breaches of fiduciary duty.

E.      **The Defendants Breached Their Duty of Candor by Disseminating the
        Materially Incomplete and Misleading Proxy Statement.**

93.      The Defendants further breached their fiduciary duties to Bear State's public

shareholders by causing a materially incomplete and misleading Proxy Statement to be mailed to

them on or about October 6, 2017.  As discussed below, the Proxy Statement omits material

information that is necessary for Bear State's public shareholders to cast a fully informed vote

with respect to the Proposed Transaction.

94.      With respect to Bear State management's financial forecasts, the Proxy fails to

disclose Bear State's projected free cash flows for the years ending December 31, 2017 through

December 31, 2022 on a stand-alone basis, which were prepared by Bear State's management

and provided to Raymond James for purposes of preparing its valuation analyses.  *See* Proxy 40.

It is well settled that cash flow projections are material to shareholders who have been asked to

assess the fairness of an all-cash merger transaction.  Under sound corporate finance theory, the

value of stock should be premised on the expected future cash flows of the corporation; thus, the question that Bear State shareholders must assess in determining whether to vote for the cash merger is clear: is the price being offered now fair compensation for the benefits they will receive as a shareholder from the future expected cash flows of the corporation if the corporation remains as a going concern? The omission of the cash flow projections renders the projections set forth on page 43 of the Proxy, as well as the summary of Raymond James's *Discounted Cash Flow Analysis* on page 40-41, materially incomplete and misleading.  If a proxy discloses projections, such projections must be complete and accurate.

95.     Defendants must also disclose the projections necessary to reconcile the non-GAAP (generally accepted accounting principles) projections included in the Proxy (tangible book value per share and tangible common equity) to the most directly comparable GAAP measures, as they routinely do in their quarterly earnings releases[4].  Such projections and reconciliation are material to the Company's shareholders because they are necessary for them to properly assess the value of the Company and make sense of the non-GAAP projections, which lack consistent definitions, are highly subjective and prone to manipulation[5].

96.     With respect to Raymond James's *Selected Companies Analysis* (Proxy 36-37) and *Selected Transaction Analysis* (Proxy 38-40), the Proxy fails to disclose the individual multiples Raymond James calculated for each company and transaction utilized.  A fair summary of these analyses requires the disclosure of the individual multiples Raymond James calculated, and such information is material to Bear State's shareholders, as it is necessary for them to assess

---

[4] *See, e.g.*, Bear State Financial, Inc. Announces First Quarter 2017 Earnings, April 20, 2017, http://www.bearstatefinancial.com/file.aspx?IID=102666&FID=2000175549.

[5] *See, e.g.*, Gretchen Morgenson, *Fantasy Math is Helping Companies Spin Losses Into Profits*, N.Y. TIMES (April 22, 2016), https://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html.

whether Raymond James applied appropriate multiples or, instead, applied unreasonably low multiples to drive down the implied per share valuations for the Company.

97.     With respect to Raymond James's *Discounted Cash Flow Analysis*, the Proxy also fails to disclose the inputs and assumptions Raymond James utilized to arrive at the discount rates of 11.5% to 13.5% that it applied. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars.*…This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion <u>unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices</u>.* The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions. *Id.* at 1577-78.

98.     Further, as noted above, the Proxy fails to provide any information regarding the "revisions" that were made to Raymond James's valuation analyses between the date it made its initial fairness presentation to the Board (August 11, 2017) and the date it provided its "revised financial analysis and fairness opinion" to the Board on August 21, 2017, which was revised to

account for Arvest lowering its offer from $10.53 to $10.28.   Details regarding Raymond James's "revisions", including what specific revisions were made and why, are material to Bear State shareholders, as such information is necessary for them to assess whether Raymond James manipulated its valuation analyses downward after Arvest lowered its offer so that it could still render a fairness opinion (and thereby collect its $600,000 fee).

99.   The Proxy also fails to properly disclose Raymond James's relationship with Arvest and the amount of compensation it has received from Arvest in recent years.   Instead, the Proxy misleadingly states "In the two years preceding the date of Raymond James's opinion, Raymond James has not been engaged by or otherwise performed services for Arvest *for which compensation received was deemed material*."   Proxy 42.   The qualifying language, "for which compensation received was deemed material", suggests that Raymond James has in fact performed services for Arvest in the past two years, but whoever assessed the amount of compensation Raymond James received for such work did not "deem" it to be "material."   Of course, any single fee may not be considered "material" to a multi-billion-dollar bank in the grand scheme of its business operations, but such fees must be disclosed to shareholders who have been asked to rely on that banker's fairness opinion.

100.   The Proxy further fails to provide any information regarding: (i) the amount of compensation DD&F has received or will receive in connection with the strategic review process and Proposed Transaction; (ii) whether DD&F has performed any work for either Arvest or Bear State in recent years and, if so, the amount of compensation it has received for such work; and (iii) whether DD&F has any financial interest in or financial ties to Arvest.   This information is material to the Company's shareholders, as DD&F was the entity that first suggested that Mr. Massey explore a transaction with Arvest in March 2017, and was also engaged by the Board as

a consultant to assist in the performance of the flawed and inadequate "market check" and to provide other consulting services in connection with a potential transaction.

101.    With respect to the disclosure omissions related to both Raymond James and DD&F, it is well settled that information that bears on whether an advisor to the board faces conflicts of interest is material to shareholders when deciding how to vote.  It is imperative for the shareholders to be able to understand what factors might influence the advisor's analytical efforts.   An advisor's own proprietary financial interest in a proposed transaction must be carefully considered in assessing how much credence to give its analysis.  For that reason, the benefits of the merger to the advisor, beyond its expected fee, must be disclosed to the shareholders.   There is no rule that conflicts of interest must be disclosed only where there is evidence that the advisor's work or opinion was actually affected by the conflict.  Further, it is not only the amount and nature of a contingent fee that is relevant to an advisor's interest in a transaction.  The relationships between advisor's and corporate management can run deep, and advisors often has business with the corporation and its management that spans more than one transaction.   Where an advisor is providing a fairness opinion or services for long-standing clients, it may be influenced to find a transaction fair or steer the sales process towards a transaction with a particular party in order to avoid irritating management and other corporate actors who stand to benefit from the transaction, as this will ensure future lucrative business.  A reasonable shareholder would want to know an important economic motivation of the negotiator singularly employed by a board to obtain the best price for the shareholders, when that motivation could rationally lead that negotiator to favor a deal at a less than optimal price, because the procession of a deal was more important to him, given his overall economic interest, than only doing a deal at the right price.

102.    Lastly, the Proxy fails to adequately disclose the "members of Bear State's senior management team" that are expected to continue as employees of Arvest or its affiliates following the consummation of the merger. Proxy 46.  Defendants must disclose the names of such individuals, as well as the dates/time frame during which they discussed the possibility of continuing employment with Arvest's representatives.  Such information is material to Bear State shareholders, as it is necessary for them to properly assess how much of an impact this conflict of interest had on the strategic review and negotiation process.

103.    In sum, Defendants have breached their duty of candor to the Company's public shareholders by omitting material information from the Proxy Statement and thereby depriving shareholders of their right to cast a fully informed vote on the Proposed Transaction.

## FIRST CAUSE OF ACTION

**Claim for Breach of Fiduciary Duties Against the Individual Defendants in Their Capacities as Directors and/or Officers of the Company**

104.    Plaintiffs repeat and reallege each allegation set forth herein.

105.    The Individual Defendants have breached their fiduciary duties of care, loyalty, good faith and candor owed to the public shareholders of Bear State pursuant to both Ark. Code Ann. § 4-27-830, § 4-27-842 and common law.

106.    By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiffs and other members of the Class of the true value of their investment in Bear State.

107.    As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith and independence owed to the shareholders of Bear State because, among other things, they: (i) failed to obtain fair

consideration for Bear State shareholders in connection with the Proposed Transaction; (ii) agreed to unfair provisions in the Merger Agreement that impede superior bidders from emerging; and (iii) utilized the strategic review and negotiation process to procure unique personal financial benefits for themselves, to the detriment of the Company's remaining shareholders.

108.   The Individual Defendants dominate and control the business and corporate affairs of Bear State, and are in possession of private corporate information concerning Bear State's assets, business and future prospects.   Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Bear State which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing shareholder value.

109.   By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiffs and the other members of the Class, and have acted in bad faith in facilitating the Proposed Transaction.

110.   As a result of the actions of the Individual Defendants, Plaintiffs and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Bear State's assets and businesses and have been and will be prevented from obtaining a fair price for their common stock.

111.   Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiffs and the members of the Class, all to the irreparable harm of the members of the Class.

## SECOND CAUSE OF ACTION

**Claim for Breach of Fiduciary Duties Against Massey and BSF Holdings in their Capacity as Controlling Shareholders of the Company**

112.    Plaintiffs repeat and reallege each allegation set forth herein.

113.    Massey and BSF Holdings exercised control over the business and affairs of the Company.  As controlling shareholders of the Company, they owe fiduciary duties of loyalty, care, good faith and candor to Plaintiffs and the Class.

114.    Massey and BSF Holdings breached their fiduciary duties owed to the unaffiliated public shareholders of Bear State.  By the acts, transactions and courses of conduct alleged herein, Massey and BSF Holdings, individually and acting as a part of a common plan, unfairly deprived Plaintiffs and the Class of the true value of their investment in Bear State.

115.    As demonstrated by the allegations above, Massey and BSF Holdings failed to exercise the necessary care required, acted in bad faith, and breached their fiduciary duties as controlling shareholders by, among other things:

a.    extracting personal financial benefits for themselves and the other Individual Defendants who have a pecuniary interest in BSF Holdings in connection with the Proposed Transaction, at the expense of the Company's unaffiliated shareholders;

b.    failing to properly value the Company;

c.    failing to take all steps reasonable and necessary to obtain fair consideration for the Company's unaffiliated shareholders;

d.    failing to act independently to protect the interests of the Company's unaffiliated shareholders;

e.    failing to adequately ensure that no conflicts of interest existed between their own interests and their fiduciary obligations;

41

f.      failing to ensure that all conflicts of interest were resolved in the best interests of Bear State's unaffiliated public shareholders.

116.    Unless Massey and BSF Holdings are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiffs and the members of the Class, all to the irreparable harm of the members of the Class.

## JURY DEMAND

117.    Plaintiffs respectfully request a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand relief in their favor and in favor of the Class and against Defendants as follows:

A.      Declaring that this action is properly maintainable as a class action and certifying Plaintiffs as class representatives;

B.      Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for shareholders and discloses the above-referenced material information that has been omitted from the Proxy to the Company's shareholders;

C.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiffs and the Class rescissory damages;

D.      In the event the Proposed Transaction is consummated, awarding Plaintiffs and the Class damages incurred as a result of Defendants' wrongdoing, including pre and post-judgment interest;

E.      Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.      Granting such other and further equitable relief as this Court may deem just and proper.

Respectfully submitted,

/s/ Bryce Brewer
Bryce Brewer, AR Bar #2002013
Bryce Brewer Law Firm, LLC
800 West 4th Street
North Little Rock, AR 72114
(501) 978-3030 phone
(501) 978-3050 fax
bryce@brycebrewerlaw.com

*Attorneys for Plaintiffs*

MONTEVERDE & ASSOCIATES PC
Juan E. Monteverde
Miles D. Schreiner
350 Fifth Avenue, Suite 4405
New York, NY 10118
Telephone: (212) 971-1341
Fax: (212) 202-7880

ADEMI & O'REILLY, LLP
Guri Ademi
Shpetim Ademi
3620 East Layton Ave.
Cudahy, WI 53110
Telephone: (414) 482-8000
Fax: (414) 482-8001

*Attorneys for Plaintiffs*