ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2017-Sep-11  09:20:14
60CV-17-5022
C06D06 : 23 Pages

## IN THE CIRCUIT OF PULASKI COUNTY, ARKANSAS
## _____ DIVISION

JAMES OWENS, Individually
And On Behalf Of All Others Similarly Situated                    PLAINTIFF

vs.                              CASE NO. 60CV-17-_____

RICHARD N. MASSEY,
J. MATTHEW MACHEN,
W. DABBS CAVIN,
WILLIAM CHANGOSE,
K. AARON CLARK, FRANK CONNER,
SCOTT T. FORD, G. BROCK GEARHART,
JOHN J. GHIRARDELLI,
OMON FITZGERALD HILL,
DANIEL C. HORTON,
IAN R. VAUGHAN, and
BEAR STATE FINANCIAL HOLDINGS, LLC              DEFENDANTS

### CLASS ACTION COMPLAINT

James Owens ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including the investigation of counsel and a review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### SUMMARY OF THE ACTION

1.      Plaintiff brings the action individually and on behalf of similarly situated holders of the common stock of Bear State Financial, Inc. ("Bear State" or the "Company"), against the directors and certain officers of Bear State (collectively, the "Individual Defendants" or "Board") for breaching their fiduciary duties in connection with a proposed merger transaction by which Arvest Bank ("Arvest"), through its wholly owned subsidiary Arvest Acquisition Sub, Inc.

("Merger Sub"), will acquire all of the outstanding stock of Bear State for inadequate consideration (the "Proposed Transaction"). Plaintiff also asserts a claim against Richard N. Massey ("Massey"), Bear State's Chairman of the Board, and his affiliated entity Bear State Financial Holdings, LLC ("BSF Holdings" and, together with the Individual Defendants, the "Defendants") for breaching their fiduciary duties in their capacities as controlling shareholders of the Company.

2.     On August 22, 2017, Bear State and Arvest jointly issued a press release announcing that they had entered into a definitive Agreement and Plan of Reorganization ("Merger Agreement") pursuant to which Arvest will acquire Bear State in a transaction valued at approximately $391 million in the aggregate.

3.     On August 25, 2017, Bear State filed a Form 8-K with the SEC wherein it disclosed the terms of the Merger Agreement. Pursuant to the Merger Agreement, Merger Sub will merge with and into Bear State, with Bear State surviving the merger as a wholly owned subsidiary of Arvest.

4.     According to Bear State's Form 8-K, at the effective time of the merger, each share of Bear State common stock will be converted into the right to receive $10.28 in cash per share (the "Merger Consideration").

5.     Like many financial institutions, Bear State has been making steady progress in recovering from the financial crisis of 2008, before which its stock was trading at more than $50 per share. By 2014, Bear State had improved its balance sheet, steadily improved its regulatory capital requirements, and improved the quality of its loan portfolio under a more rigorous practice of proactive credit risk management. As Bear State confirmed in its most recent financial results, the Company's core profitability continues to improve. Bear State is poised for

strong growth and its solid balance sheet gives the Company an opportunity for further internal expansion and the exploration of acquisition opportunities.

6.      Thus, the Merger Consideration being offered to Bear State's public shareholders in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of Bear State common stock is materially in excess of the Merger Consideration given the Company's recent financial performance and its prospects for future growth and earnings.

7.      Significantly, insiders and affiliates of Bear State own approximately 45.73% of the Company's outstanding common stock. Individual Defendant Richard N. Massey, Chairman of the Company's Board, has sole voting and dispositive control over approximately 42.35% of the outstanding stock of Bear State. Individual Defendant Massey's control of these shares primarily derives from his position as the managing member of BSF Holdings, which owns 40.28% of the Company's outstanding common stock. Bear State director William Changose is a member of and serves as Chief Operating Officer of BSF Holdings. Bear State directors Scott Ford and Dabbs Cavin and certain officers of the Company, including Matt Machen, Sherri Billings, Tom Fritsche, Shelly Loftin, Donna Merriweather, Yurik Paroubek and Paul Lowe are also members of BSF Holdings. BSF Holdings and Richard N. Massey have each entered into voting agreements with Arvest and agreed to vote in favor of the Proposed Transaction.

8.      In light of Massey's significant stock ownership and position as Chairman of the Board and managing member of BSF Holdings, Massey and BSF Holdings are controlling shareholders of Bear State. Massey and BSF Holdings owe fiduciary duties to the Company's remaining shareholders in their capacity as controlling shareholders of the Company, which they have breached by agreeing to the Proposed Transaction for the unfair Merger Consideration.

Further, because Individual Defendant Massey (who has the sole power to vote and dispose of BSF Holdings' shares in the Company) and the other Individual Defendants who hold leadership positions at BSF Holdings (Messrs. Machen, Changose, Ford, and Cavin) each stand to receive personal, unique financial benefits in connection with the Proposed Transaction, including the accelerated vesting of outstanding restricted stock units ("RSUs"), options, and warrants and/or other significant "change in control" payments, the Proposed Transaction is subject to the exacting entire fairness standard of review, which requires Defendants to establish that the Proposed Transaction was the result of an entirely fair process and resulted in a fair price. As set forth herein, both the Merger Consideration and the process by which the Defendants have agreed to consummate the Proposed Transaction are unfair to the Company's remaining shareholders.

9.      To ensure that the Proposed Transaction is consummated, the Individual Defendants locked up the deal by agreeing to unfair "deal-protection" provisions in the Merger Agreement, effectively rendering the Proposed Transaction a *fait accompli*. For example, the Board agreed to: (i) a "no-shop" provision that prevents the Company from negotiating with or providing confidential Company information to competing bidders except under extremely limited circumstances; (ii) a "matching rights" provision that allows Arvest five (5) business days to match any competing proposal in the unlikely event that one emerges; and (iii) a $14 million termination fee to be paid to Arvest if the Board agrees to accept a competing proposal.

10.      In pursuing the unfair plan to facilitate the acquisition of Bear State by Arvest for grossly inadequate consideration, through a flawed process, each of the Individual Defendants violated applicable law by directly breaching and/or aiding the other Individual Defendants' breaches of their fiduciary duties of loyalty, due care, independence, good faith and fair dealing.

11.    For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin the consummation of the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of their fiduciary duties of loyalty, good faith and due care.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that is incorporated in this State, or is an individual who is a director of a corporation incorporated State and otherwise has sufficient minimum contacts with Arkansas so as to render the exercise of jurisdiction by the Arkansas courts permissible under traditional notions of fair play and substantial justice.

13.    Venue is proper in this Court because Bear State is headquartered in this County, a substantial portion of the transactions and wrongs complained of herein, including the Defendants' breaches of their fiduciary duties owed to Bear State shareholders, occurred in this County, and Defendants have received substantial compensation in this County by doing business here and engaging in numerous activities that had an effect in this County.

## THE PARTIES & RELEVANT NON-PARTIES

14.    Plaintiff James Owen is, and has been at all times relevant hereto, a shareholder of Bear State.

15.    Individual Defendant Richard N. Massey is Chairman of the Board of Directors of the Company and has been a director since 2011. Massey previously served as the Company's interim President and Chief Executive Officer. Through affiliates and directly, Massey owns approximately 42.35% of Bear State's outstanding stock. More specifically, Massey is the managing member of BSF Holdings, the Company's largest shareholder, which owns

approximately 40.28% of Bear State's outstanding common stock.  Massey has sole voting and dispositive power over the shares of common stock owned by BSF Holding.  Massey has also been a member of Westrock Capital Partner, LLC, since January 2009.  From 2006 to 2009, Massey was Executive Vice President, Chief Strategy Officer and General Counsel of Alltel Corporation.  As a result of his positions at Alltel and Westrock, Massey has had a long-standing relationship with Individual Defendants Ford and Changose.

16.    Individual Defendant J. Matthew Machen ("Machen") is President and Chief Executive Officer of the Company and the Bear State Bank. Machen was appointed as a director of the Company in connection with his promotion on January 18, 2017.  Mr. Machen originally joined Bear State Bank in 2011 as a Senior Vice President. Thereafter, he served as Regional President of Bear State Bank from May 2012 to June 2014, as Executive Vice President and Chief Financial Officer of the Company from June 2014 to April 2016, and as President of Bear State Bank beginning in May 2016.

17.    Individual Defendant W. Dabbs Cavin ("Cavin") is the Vice Chairman of the Board of Directors of the Company and has been a director since 2011. From 2011 until June 30, 2013, Cavin served as Chief Executive Officer of the Company and First Federal Bank (the predecessor to the Bear State Bank).  Cavin is also a member of BSF Holding.

18.    Individual Defendant William Changose ("Changose") has been a director of Bear State since 2017, and also serves as Chief Operating Officer of BSF Holdings. Changose was recommended for service on the Board by Individual Defendant Massey. Changose also currently serves as the Chief Operating Officer of both Westrock Capital Partners, LLC and Westrock Group, LLC and serves as President of Westrock Coffee Roasting, LLC.  Changose originally joined Westrock Capital Partners in 2009.

19. Individual Defendant K. Aaron Clark ("Clark") has been a director of Bear State since 2011.

20. Individual Defendant Frank Conner ("Conner") has been a director of Bear State since 2003.

21. Individual Defendant Scott T. Ford ("Ford") has been a director of Bear State since 2011. Ford is also a member of BSF Holdings. Ford is also a member and chief executive officer of Westrock Group, LLC, a private, family-owned commodities trading firm he founded in 2013. Westrock Group operates Westrock Coffee Company, LLC, a coffee exporter, trader, importer and roaster, and Westrock Asset Management, LLC, a global asset management firm. Ford founded Westrock Coffee Company in 2009 and Westrock Asset Management in 2014. He previously served as President and Chief Executive Officer of Alltel Corporation (a provider of wireless voice and data communications services) from 2002 to 2009, and prior to that, he served as its President and Chief Operating Officer from 1998 to 2002.

22. Individual Defendant G. Brock Gearhart ("Gearhart") has been a director of Bear State since 2012.

23. Individual Defendant John J. Ghirardelli ("Ghirardelli") has been a director of Bear State since 2015.

24. Individual Defendant Omon Fitzgerald Hill ("Hill") has been a director of Bear State since 2011.

25. Individual Defendant Daniel C. Horton ("Horton") has been a director of Bear State since 2014.

26. Individual Defendant Ian R. Vaughan ("Vaughan") has been a director of Bear State since 2014.

7

27.     In addition to defendants Massey, Cavin, Changose and Ford, who are each affiliated with BSF Holdings as a managing member or member, certain officers of the Company, including Matt Machen, Sherri Billings, Tom Fritsche, Shelly Loftin, Donna Merriweather, Yurik Paroubek and Paul Lowe are also members of BSF Holdings.

28.     Massey, Machen, Cavin, Changose, Clark, Conner, Ford, Gearhart, Ghirardelli, Hill, Horton and Vaughan are collectively referred to as the "Individual Defendants" or the "Board".

29.     Defendant Bear State Financial Holdings, LLC (referred to herein as BSF Holdings) is the Company's largest shareholder.  As of March 28, 2017, BSF Holdings owned 15,182,463 shares of Company common stock.  This represents approximately 40.28% of the Company's common stock.  As a result of its substantial interest in the Company, BSF Holdings is able to significantly influence the Company's corporate and management policies and the outcome of any corporate transaction or other matter submitted to shareholders for approval. Individual Defendant Massey, the Chairman of the Board of the Company, is the managing member of BSF Holdings, which provides him with the sole power to vote and dispose of the shares of the Company held by BSF Holdings.  Individual Defendant William Changose is a member of and serves as Chief Operating Officer of BSF Holdings.  Defendants Scott Ford and Dabbs Cavin and certain officers of the Company, including Matt Machen, Sherri Billings, Tom Fritsche, Shelly Loftin, Donna Merriweather, Yurik Paroubek and Paul Lowe are also members of BSF Holdings.  As such, each has an interest in BSF Holdings' investment in the Company to the extent of their individual pecuniary interests in BSF Holdings.  Further, Mr. Fritsche had a preexisting relationship with Arvest, having served as the Executive Vice President and Lending Manger at Arvest Banking Company from 2002 to 2004.

30.     Non-party Bear State is an Arkansas corporation headquartered at 900 South Shackleford Rd, Suite 401, Little Rock, Arkansas.  The Company is a $2.3 billion asset bank holding company.  Its principal subsidiary, Bear State Bank, is a community oriented financial institution providing a broad line of financial products to individuals and business customers. Bear State Bank operates 42 branches, three personalized technology centers equipped with interactive teller machines, and three loan production offices, located throughout Arkansas, Southwest Missouri and Southeast Oklahoma.  Bear State's stock is traded on the NASDAQ stock exchange under the symbol "BSF."

31.     Non-party Arvest is an Arkansas banking corporation and is a financial institution with $16 billion in assets.  Arvest Bank operates more than 250 bank branches in Arkansas, Oklahoma, Missouri, and Kansas through a group of 16 locally managed markets, each with its own local board and management team.  Arvest is headquartered in Fayetteville, Arkansas.

32.     Non-party Merger Sub is an Arkansas corporation formed for the sole purpose of facilitating the consummation of the Proposed Transaction.

## THE DEFENDANTS' FIDUCIARY DUTIES

33.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Plaintiff and the other shareholders of Bear State and owe Plaintiff and the other members of the Class (defined herein) the duties of good faith, fair dealing, care, loyalty, and candor.

34.     Further, Individual Defendant Massey and BSF Holdings owe the Company's remaining shareholders fiduciary duties of good faith, fair dealing, care, loyalty, and candor in their capacity as controlling shareholders of the Company.

35.    By virtue of their positions as directors, officers, and/or controlling shareholders of Bear State, Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Bear State to engage in the practices complained of herein.

36.    Each of the Defendants is required to act in good faith, in the best interests of the Company's shareholders and with such care, including reasonable inquiry, as would be expected of an ordinarily prudent person.  In a situation where the directors of a publicly traded company undertake a transaction that may result in a change in corporate control, the directors must take all steps reasonably required to maximize the value shareholders will receive rather than use a change of control to benefit themselves, and to disclose all material information concerning the proposed change of control to enable the shareholders to make an informed voting decision.  To diligently comply with this duty, the directors of a corporation may not take any action that:

(a)    adversely affects the value provided to the corporation's shareholders;

(b)    contractually prohibits them from complying with or carrying out their fiduciary duties;

(c)    discourages or inhibits alternative offers to purchase control of the corporation or its assets;

(d)    will otherwise adversely affect their duty to search for and secure the best value reasonably available under the circumstances for the corporation's shareholders; or

(e)    will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

37.    Plaintiff alleges herein that the Defendants, separately and together, in connection with the Proposed Transaction, violated duties owed to Plaintiff and the other shareholders of Bear State, including their duties of care, loyalty, good faith and independence, insofar as they,

*inter alia*, engaged in self-dealing and obtained for themselves personal benefits, including personal financial benefits, not shared equally by Plaintiff or the other shareholders of Bear State common stock.

## CLASS ACTION ALLEGATIONS

38.    Plaintiff brings this action pursuant to Arkansas Rule of Civil Procedure 23, on behalf of all holders of Bear State common stock who are being and will be harmed by the Defendants' actions described below (the "Class").  Excluded from the Class are the Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

39.    This action is properly maintainable as a class action because:

(a)    The Class is so numerous that joinder of all members is impracticable. According to Bear State's most recent quarterly report on Form 10-Q, as of July 28, 2017, there were approximately 37,713,171 shares of Bear State common stock outstanding.  The actual number of public shareholders of Bear State will be ascertained through discovery;

(b)     There are questions of law and fact which are common to the Class, including *inter alia,* the following:

      i.    whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence, or due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

      ii.    whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the

circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

iii.     whether Massey and BSF Holdings, as controlling shareholders of the Company, breached their fiduciary duties to the Company's remaining shareholders; and

iv.     whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction complained of herein consummated.

(c)     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

(d)     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e)     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f)     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

A.     **Background**

40.     The Company is a $2.24 billion asset bank holding company. Its primary subsidiary is Bear State Bank, which operates 42 branches, three personalized technology centers

equipped with interactive teller machines, and three loan production offices, located throughout Arkansas, Southwest Missouri and Southeast Oklahoma.

41.    Bear State has steadily recovered from the financial crisis of 2008, before which its stock was trading at more than $50 per share.  By 2014, Bear State had improved its balance sheet, steadily improved its regulatory capital requirements, and improved the quality of its loan portfolio under a more rigorous practice of proactive credit risk management.  As Bear State confirmed in its most recent financial results, the Company's core profitability continues to improve.  Bear State is poised for strong growth and its solid balance sheet gives the Company an opportunity for further internal expansion and the exploration of acquisition opportunities.

42.    The Proposed Transaction comes at a time when Bear State's recent and future success has not been fully reflected by its share price. While the Company's per share price was on the rise as a result of its strong growth prospects, the Proposed Transaction will inappropriately cap the growth Bear State shareholders have finally begun to see in their investment.

43.    On April 20, 2017, Bear State released its first quarter financial results for the period ended March 31, 2017 and reported record revenues and improving profitability, asset portfolio, and expense controls.  The press release stated in part:

> The company experienced record revenue of $23 million in the first quarter of 2017 which is an increase of 12% compared to the first quarter of 2016. Net interest income increased 11% for the first quarter of 2017 compared to the first quarter of 2016 primarily due to loan portfolio growth. Noninterest income increased 14% for the first quarter of 2017 compared to the first quarter of 2016 primarily due to increases in gain on sale of loans and deposit fee income.
>
> Along with revenue growth, the Company continued to focus on operational efficiency as evidenced by the decrease in noninterest expense of 6% for the first quarter of 2017 compared to the first quarter of 2016, resulting in an improvement in the Company's efficiency ratio to 63% in the first quarter of 2017 compared to 74% in the first quarter of 2016. Further, the Company's core efficiency ratio improved to 56% in the first quarter

of 2017 compared to 72% in the first quarter of 2016. During the first quarter of 2017, the Company consolidated three of its retail branch locations and transitioned one limited service branch location to operate using personalized technology with Interactive ATMs ("ITMs") only. Two additional retail branch locations will transition to operate solely with ITMs in the second quarter of 2017.

44.    On July 27, 2017, Bear State released its second quarter financial results for the period ended June 30, 2017.    The Company reported "record" revenues and improving net income.  The press release stated in part:

> The Company experienced record revenue of $23.4 million in the second quarter of 2017, which is an increase of 12% compared to the second quarter of 2016. Net interest income increased 12% for the second quarter of 2017 compared to the second quarter of 2016 primarily due to loan portfolio growth. Noninterest income increased 9% for the second quarter of 2017 compared to the second quarter of 2016 primarily due to increases in earnings on life insurance and deposit fee income.
>
> Along with revenue growth, the Company continued to focus on operational efficiency as evidenced by the decrease in noninterest expense of 15% for the second quarter of 2017 compared to the second quarter of 2016, resulting in an improvement in the Company's efficiency ratio to 55% in the second quarter of 2017 compared to 72% in the second quarter of 2016. Further, the Company's core efficiency ratio improved to 56% in the second quarter of 2017 compared to 68% in the second quarter of 2016. During the second quarter of 2017, the Company transitioned two branch locations to operate using personalized technology with Interactive ATMs ("ITMs") only.

45.    As reflected by Bear State's recent financial performance, the Merger Consideration undervalues the Company's shares.  As a recent article on investor news website CapitalCube stated: "Bear State Financial, Inc. relative valuation is UNVALUED...Bear State Financial, Inc. has shown excellent performance overall, both over the last one year as well as over the last month...The company's year-on-year change in revenues and earnings are better than the median among its peer group." And, according to a recent report by Morningstar, the Company's shares are worth at least $10.49.

46.    Despite Bear State's impressive financial results in recent quarters and its strong growth prospects, Defendants have agreed to sell the Company now and deprive its shareholders

of the ability to partake in the Company's future growth. Defendants breached their fiduciary duties owed to the Company's remaining shareholders by agreeing to the Proposed Transaction for the unfair Merger Consideration.

**B.      The Proposed Transaction**

47.      On August 22, 2017, Bear State and Arvest jointly announced the Proposed Transaction in a press release stating:

> FAYETTEVILLE, Ark. & LITTLE ROCK, Ark.--(BUSINESS WIRE)-- Bear State Financial, Inc. ("Bear State") (NASDAQ:BSF), parent company of Bear State Bank, and Arvest Bank jointly announced today the signing of a definitive agreement for Arvest Bank to acquire Bear State in an all-cash transaction valued at approximately $391 million, or $10.28 per share of Bear State common stock.
>
> The agreement and plan of reorganization was unanimously approved by the boards of directors of each company. The transaction is expected to close in the fourth quarter of 2017 or first quarter of 2018 and is subject to customary conditions, including both regulatory approval and approval by Bear State's shareholders.
>
> Clients of Bear State Bank and Arvest Bank will not notice any immediate changes, and both banks will continue to conduct business as usual. At a later date, Bear State Bank's branding will change to Arvest Bank, with the full conversion of systems expected to occur in 2018.
>
> DD&F Consulting, Inc. served as a consultant to Bear State and Raymond James & Associates, Inc. provided a fairness opinion. Kutak Rock LLP provided legal counsel to Bear State and Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd. and McAfee & Taft PC provided legal counsel to Arvest.

48.      Rather than continuing to build upon Bear State's great strides since 2014, the Merger Consideration being offered to Bear State's public shareholders in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of Bear State common stock is materially in excess of the amount offered given the Company's recent financial performance and its prospects for future growth and earnings.

C.      **The Preclusive Deal Protection Devices**

49.      To the detriment of Bear State shareholders, the Individual Defendants agreed, in the Merger Agreement, to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and all but ensure that the Proposed Transaction is consummated and that no competing offers emerge for the Company.

50.      Section 7.4 of the Merger Agreement is a restrictive no-shop provision that prohibits the members of the Board from soliciting proposals relating to alternative offers or business combinations.

51.      The Merger Agreement also includes a strict "standstill" provision which prohibits, except under extremely limited circumstances, the Individual Defendants from engaging in discussions or negotiations relating to proposals regarding alternative acquisitions or business combinations.

52.      Section 7.4(a) of the Merger Agreement requires the Board to provide Arvest with written notice of any Acquisition Proposal within two (2) business days of its receipt.  Further, the Board must provide prior written notice within two (2) business days of its intention to terminate the Merger Agreement in favor of any Superior Proposal and negotiate with Arvest following Arvest's receipt of the notice, so that Arvest has the opportunity within five (5) business day to adjust the terms and conditions of the Merger Agreement so that the Company Acquisition Proposal ceases to be a Superior Proposal.

53.      In addition, the Merger Agreement provides that Bear State must pay Arvest a termination fee of $14 million, representing 3.6% of the approximate deal value of $391 million, if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay an unreasonable premium for the right to provide the Company's

shareholders with a superior offer.  A termination fee in the amount 3.6% is unreasonably high for this type of transaction and strongly discourages any other bidder from coming forward.

54.    Ultimately, these preclusive deal protection devices restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The aggregate effect of these preclusive deal protection devices, viewed in light of the materially inadequate consideration offered for Bear State shares in the Proposed Transaction, supports an inference that the Board was not acting in good faith in approving the terms of the Merger Agreement.

55.    Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

**D.    Massey and the Other Individual Defendants Affiliated with BSF Holdings Stand to Receive Significant Personal Financial Benefits as a Result of the Proposed Transaction.**

56.    If the Proposed Transaction is consummated, Massey and the other Individual Defendants who have a pecuniary interest in BSF Holdings (Messrs. Machen, Changose, Ford, and Cavin) collectively stand to receive significant personal financial benefits, including "change in control" payments and the accelerated vesting of RSUs, options, and warrants.

57.    Section 3.2 of the Merger Agreement requires the Board to adjust the terms of all outstanding Company RSUs, warrants, and options (whether vested or unvested) to provide that, at the effective time of the Proposed Transaction, each such RSU, warrant, and option shall be cancelled and the holder shall become entitled to receive a single lump sum cash payment in the amount set forth on the Closing Financial Certificate that was prepared in connection with the Merger Agreement.

58.     According to the Company's most recent Definitive Proxy Statement, Individual Defendants Massey, Machen, Changose, Cavin, and Ford each beneficially own Company RSUs, warrants, or options that will be cancelled in exchange for a lump sum cash payment upon the consummation of the Proposed Transaction.  Further, during 2016, all of the Individual Defendants other than those that also serve as officers of the Company or BSF Holdings received an award of 1,100 RSUs that vest in equal annual installments over the course of three years. Such RSUs will be accelerated and paid out as a result of the Proposed Transaction.

59.     Further, according to the Company's most recent Definitive Proxy Statement, Individual Defendant Machen will receive a $500,000 severance payment (which equals two times his current annualized base salary) and $477,886 as a result of the accelerated vesting of his Company equity awards.

60.     In sum, concurrently with negotiating the terms of the Merger Agreement and the value of the Merger Consideration, the Individual Defendants negotiated for and procured unique personal financial benefits for themselves in connection with the Proposed Transaction.  Such conduct constitutes a breach of the Defendants' fiduciary duties, and renders the Proposed Transaction subject to entire fairness review.

61.     Massey has a history of utilizing his control and influence over the Company to personally benefit himself and his affiliated business entities, including Westrock.  Specifically, the Company and Massey jointly owned a Beechcraft Baron aircraft that was purchased in 2014 for a contract price of $775,000.  The Company owned a 75% undivided interest in the aircraft and Mr. Massey owned a 25% undivided interest in the aircraft.  On February 16, 2017, the Company and Mr. Massey sold the aircraft to an unaffiliated third party for $575,000.  Prior to the sale of the aircraft, the Company and Mr. Massey were parties to an Aircraft Management

Agreement with Westrock Aviation, LLC ("Westrock Aviation"), an entity that is owned in part and controlled by Mr. Massey and Individual Defendant Ford. During 2016, the Company paid approximately $172,063 and Mr. Massey paid approximately $41,284 to Westrock Aviation pursuant to the Aircraft Management Agreement. Mr. Massey and Mr. Ford are deemed to have a material interest in the above-described transaction due to their respective ownership of Westrock Aviation. As set forth above, Massey has once again used his control and influence over the Company to extract unique personal financial benefits for himself and his associates.

**FIRST CAUSE OF ACTION**

**Claim for Breach of Fiduciary Duties Against the Individual Defendants in Their
Capacities as Directors and/or Officers of the Company**

62.     Plaintiff repeats and realleges each allegation set forth herein.

63.     The Individual Defendants have breached their fiduciary duties of care, loyalty and good faith owed to the public shareholders of Bear State.

64.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Bear State.

65.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith and independence owed to the shareholders of Bear State because, among other reasons, they: (i) failed to obtain fair consideration for Bear State shareholders in connection with the Proposed Transaction; (ii) agreed to unfair provisions in the Merger Agreement that impede superior bidders from emerging; and (iii) utilized the strategic review and negotiation process to procure unique

19

personal financial benefits for themselves, to the detriment of the Company's remaining shareholders.

66.     The Individual Defendants dominate and control the business and corporate affairs of Bear State, and are in possession of private corporate information concerning Bear State's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Bear State which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing shareholder value.

67.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class, and have acted in bad faith in facilitating the Proposed Transaction.

68.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Bear State's assets and businesses and have been and will be prevented from obtaining a fair price for their common stock.

69.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

70.     Plaintiff and the members of the Class have no adequate remedy at law.

### SECOND CAUSE OF ACTION

**Claim for Breach of Fiduciary Duties Against Massey and BSF Holdings in their Capacity as Controlling Shareholders of the Company**

71.     Plaintiff repeats and realleges each allegation set forth herein.

20

72.    Massey and BSF Holdings exercised control over the business and affairs of the Company.  As controlling shareholders of the Company, they owe fiduciary duties of loyalty, care, and good faith to Plaintiff and the Class.

73.    Massey and BSF Holdings breached their fiduciary duties owed to the unaffiliated public shareholders of Bear State.  By the acts, transactions and courses of conduct alleged herein, Massey and BSF Holdings, individually and acting as a part of a common plan, unfairly deprived Plaintiff and the Class of the true value of their investment in Bear State.

74.    As demonstrated by the allegations above, Massey and BSF Holdings failed to exercise the necessary care required, acted in bad faith, and breached their fiduciary duties as controlling stockholders by, among other things:

a.    extracting personal financial benefits for themselves and the other Individual Defendants who have a pecuniary interest in BSF Holdings in connection with the Proposed Transaction, at the expense of the Company's unaffiliated stockholders;

b.    failing to properly value the Company;

c.    failing to take all steps reasonable and necessary to obtain fair consideration for the Company's unaffiliated shareholders;

d.    failing to act independently to protect the interests of the Company's unaffiliated stockholders;

e.    failing to adequately ensure that no conflicts of interest existed between their own interests and their fiduciary obligations;

f.    failing to ensure that all conflicts of interest were resolved in the best interests of Bear State's unaffiliated public stockholders.

75.     Unless Massey and BSF Holdings are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

76.     Plaintiff and the members of the Class have no adequate remedy at law.

## JURY DEMAND

77.     Plaintiff respectfully requests a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against Defendants as follows:

A.     Declaring that this action is properly maintainable as a class action and certifying Plaintiff as class representative;

B.     Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for shareholders;

C.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.     Directing Defendants to account to Plaintiff and the Class for all damages suffered as a result of Defendants' wrongdoing;

E.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.     Granting such other and further equitable relief as this Court may deem just and proper.

Respectfully submitted,


*/s/ Bryce Brewer*
Bryce Brewer, AR Bar #2002013
Bryce Brewer Law Firm, LLC
800 West 4th Street
North Little Rock, AR  72114
(501) 978-3030 phone
(501) 978-3050 fax
bryce@brycebrewerlaw.com

MONTEVERDE & ASSOCIATES PC
Juan E. Monteverde
350 Fifth Avenue, Suite 4405
New York, NY 10118
Telephone: (212) 971-1341
Fax: (212) 202-7880

ADEMI & O'REILLY, LLP
Guri Ademi
Shpetim Ademi
3620 East Layton Ave.
Cudahy, WI 53110
Telephone: (414) 482-8000
Fax: (414) 482-8001

*Attorneys for Plaintiff*