# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

JAMES OWENS, individually and on behalf
of all others similar situated; and
EDWARD HURLIMAN, individually and on
behalf of all others similarly situated                                                     PLAINTIFFS

v.                                    No. 4:17CV00714 JLH

RICHARD N. MASSEY; J. MATTHEW MACHEN;
W. DABBS CAVIN; WILLIAM CHANGOSE;
K. AARON CLARK; SCOTT T. FORD;
G. BROCK GEARHART; JOHN J. GHIRARDELLI;
OMON FITZGERALD HILL; DANIEL C. HORTON;
IAN R. VAUGHAN; BEAR STATE FINANCIAL
HOLDINGS, LLC; and FRANK CONNER                                                              DEFENDANTS

## OPINION AND ORDER

This action concerns the pending merger of two Arkansas banks. James Owens and Edward Hurliman are shareholders of Bear State Financial, Inc. ("Bear State"), a bank holding company whose primary subsidiary is Bear State Bank. Owens and Hurliman, individually and on behalf of a class of persons holding common stock of Bear State, assert claims against Bear State's officers and directors and its parent company, Bear State Financial Holdings, LLC, for breach of fiduciary duty pursuant to Ark. Code Ann. § 4-27-830, § 4-27-842, and Arkansas common law in connection with a pending merger with Arvest Bank. The plaintiffs commenced this action in the Circuit Court of Pulaski County, Arkansas. After the plaintiffs filed an amended complaint, the defendants removed the action to this Court asserting federal subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332(a), 1441, and 1446. Owens and Hurliman have filed a motion to remand. For reasons that will explained, the motion is granted.

## I.

The amended complaint alleges that the defendants breached their statutory and common law fiduciary duties in connection with a proposed merger of Bear State and Arvest Bank via the purchase of Bear State's outstanding stock. To move forward with this merger, Bear State required the approval of a majority of its shareholders.

Owens and Hurliman allege that the defendants unfairly deprived shareholders of the true value of their investment in Bear State through a fundamentally flawed sales process. Specifically, they allege that in March of 2017, Randy Dennis of DD&F Consulting Group, Inc., approached Richard Massey, Chairman of Bear State Board of Directors, and proposed selling Bear State to Arvest. At Massey's request, Dennis then spoke with Arvest's Chairman of the Board about a potential transaction between Arvest and Bear State. From April to June of 2017, Arvest and Bear State exchanged information relevant to the proposed transaction. Massey informed the board of Bear State about the proposed transaction on June 26, 2017. On July 5, 2017, representatives of Bear State informed financial institutions that Bear State was interested in a potential transaction and gave those financial institutions until July 21, 2017, to express their interest.

On July 20, 2017, "Company A" submitted a proposal to purchase Bear State with stock rather than cash. To protect the parties from fluctuations in Company A's stock price, Company A proposed an agreement that would adjust the ratio of Company A's stock to be paid if the worth of Company A's stock rose or fell. At the high end, the potential imputed value of Company A's offer was for $10.95 per share of Bear State's stock, which was $0.42 higher than Arvest's final offer. At a board meeting in July 2017, certain defendants expressed concern about the liquidity of Company A's shares. Dennis asked Company A to modify its proposal to include cash consideration

and provide certain defendants with seats on the combined company's board. Company A did not commit to meeting these demands, so Bear State ceased negotiations with Company A. Owens and Hurliman allege that the defendants disseminated proxy statements on October 6, 2017, that failed to disclose material information about the proposed merger between Bear State and Arvest. Specifically, the proxy statements allegedly omitted or misrepresented cash flow and reconciliation projections, comparable transaction multipliers, the assumptions behind the discount rate used in financial analyses, and other material information.

Owens and Hurliman request a declaration that the action is maintainable as a class action and ask to be appointed class representatives. They seek an injunction preventing the merger between Bear State and Arvest until Bear State implements a process that "provid[es] the best possible terms for shareholders" and discloses the material information omitted from the proxy statement, a rescission of the Merger Agreement between Bear State and Arvest, and if the merger is completed, damages incurred by shareholders as a result of the merger.

## II.

The defendants argue that this Court has federal question jurisdiction because the alleged misrepresentations in Bear State's proxy statements raise substantial questions of federal securities law and that the injunction defendants seek is only available under federal law. Document #19 at 12-18. Owens and Hurliman, however, maintain that nowhere in the amended complaint are there any references to federal laws or regulations and that their claims arise under the statutes and common law of Arkansas. Document #14 at 11-16. The defendants also assert that this Court has diversity of citizenship jurisdiction. Document #1 at 1. Owens and Hurliman argue that the forum-defendant rule prevents diversity jurisdiction in this matter. Document #15 at 24.

3

## A. Federal Question Jurisdiction

The Constitution grants federal courts jurisdiction over cases "arising under" federal law. U.S. Const. Art. III, § 2. Congress executed that general grant by giving federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. The "well-pleaded complaint" rule provides that to remove a civil action, a federal question must be presented on the face of the plaintiff's complaint at the time the notice of removal is filed. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987) (citation omitted); 14B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3722 (4th ed.). "The [well-pleaded complaint] rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc.*, 482 U.S. at 392; *see Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 809 n.6, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced"). As the Supreme Court has explained:

> [W]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute[,] . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 207, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004) (internal quotation omitted). Exceptions to the well-pleaded complaint rule exist, and those exceptions fall into two categories: first, if federal law completely preempts the state law upon which the plaintiffs' claim is based, a federal court may have federal question jurisdiction; and second, if determination of the relevant state law depends on resolution of a substantial, disputed federal question, the district

4

court may have federal question jurisdiction. *Hiegle v. Morgan Keegan & Co., Inc.*, No. 4:09CV00817 GTE, 2009 WL 4067240, at *3 (E.D. Ark. Nov. 20, 2009).

The defendants assert both of these exceptions in their notice of removal. First, they argue that claims "based on disclosures made in a proxy statement" are governed exclusively by federal law under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n et seq. . . ." Document #1 at ¶2. They insist that, "even where the plaintiffs assert only state law claims," a district court has federal subject-matter jurisdiction if the complaint alleges that a proxy statement contains misleading statements or material omissions. *Id.* at ¶12. These contentions amount to an argument that the Exchange Act completely preempts state-law claims related to proxy statements. Second, the defendants argue that the plaintiffs' claims "will require a federal court to decide or construe a substantial issue of federal law." Document #1 at ¶14.

"State law is preempted when Congress expressly prohibits state regulations, when Congress implicitly leaves no room for state involvement by pervasively occupying a field of regulation, and when state law directly conflicts with federal law." *Chapman v. Lab One*, 390 F.3d 620, 624 (8th Cir. 2004) (internal citations omitted). "Complete preemption" applies when "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar Inc.*, 482 U.S. at 393, 107 S. Ct. 2425 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987)). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 24, 103 S. Ct. 2841, 77 L. Ed. 420 (1983)). Therefore, a

5

completely preempted state-law cause of action provides a basis for removal to federal court. *Chapman*, 390 F.3d at 625. "Complete preemption is rare and occurs only when a federal statute has extraordinary preemptive power." *Griffioen v. Cedar Rapids and Iowa City Ry. Co.*, 785 F.3d 1182, 1189 (8th Cir. 2015) (citation omitted). "The ultimate touchstone guiding preemption analysis is congressional intent." *Id.* (citation and internal quote omitted).

Proxy statements for registered securities are governed by the Exchange Act. 15 U.S.C. § 78n(a). The defendants point to § 27 of the Exchange Act, codified at 15 U.S.C. § 78aa(a), to support their argument that the Exchange Act completely preempts state-law claims regarding proxy statements and related relief. Document #19 at 12. That provision states:

> The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.

15 U.S.C. § 78aa(a). The next section of the Act provides, however, that "the rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity." 15 U.S.C. § 78bb(a)(2). Reading these two provisions together, federal courts have exclusive jurisdiction over violations of the Exchange Act, but the Exchange Act is not the exclusive source of rights and remedies related to securities. The Eighth Circuit has held that, where a preemption clause is immediately followed by a savings clause that "displays considerable solicitude for state law," the preemption clause does not preempt state-law claims or remedies. *Chapman*, 390 F.3d at 626-27 (quoting and citing *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663, 665, 113 S. Ct. 1732, 123 L. Ed. 2d 387 (1993)); *cf. Selk v. St. Paul Ammonia Prods., Inc.*, 597 F.2d 635, 639 (8th Cir. 1979) (dismissing a claim under the Securities Act for a false and misleading

6

proxy statement while recognizing that the plaintiffs might have a claim of common law breach of fiduciary duty); *see Moriconi v. AT&T Wireless PCS, LLC*, 280 F. Supp. 2d 867, 874 (E.D. Ark. 2003) (holding that a savings clause in the Federal Communications Act, with other considerations, "compel[led] the conclusion that Congress envisioned that consumers would not be deprived of their state law causes of action"). The Exchange Act does not completely preempt state-law claims and remedies regarding proxy statements for registered securities.

As noted, a federal question may exist over a state-law claim if that claim will require the court to decide a substantial issue of federal law. This exception to the well-pleaded complaint rule applies if a federal issue is necessarily raised, actually disputed, substantial, and capable of resolution in federal court without disrupting the federal-state balance approved by court. *Gunn v. Minton*, 568 U.S. 251, 258, 133 S. Ct. 1059, 1065, 185 L. Ed. 2d 72 (2013); *Grable & Sons Metal Prod., Inc. v. Darue Eng. & Mfg.*, 545 U.S. 308, 314, 125 S. Ct. 2363, 2368, 162 L. Ed. 2d 257 (2005). The Third Circuit addressed this exception to the well-pleaded complaint rule in *Manning v. Merrill Lynch Pierce Fenner & Smith*, 772 F.3d 158 (3rd Cir. 2014). There, the plaintiffs asserted state-law claims based on allegations that the defendants manipulated the price of stock by abusive "naked" short sales, which are subject to detailed federal regulation under Regulation SHO. *Id*. at 160. The plaintiffs' amended complaint repeatedly mentioned the requirements of Regulation SHO. *Id*. at 161. After the amended complaint was filed, the defendants removed the action to federal court based on 28 U.S.C. §§ 1331 and 1337 and 15 U.S.C. § 78aa. *Id*. at 162. The district court denied the plaintiffs' motion to remand and the plaintiffs appealed. The Third Circuit reversed, saying with regard to the defendants' argument under § 1331, "Regulation SHO is not an element

7

of any of Plaintiff's claims. The claims, therefore, could be decided without reference to federal law." *Id*.

Here, as in *Manning*, the plaintiffs' state-law claims do not necessarily raise federal issues because violation of the federal regulations is not an element of any of the plaintiffs' claims: the claims can be decided without reference to federal law.

The Third Circuit also rejected an argument that the exclusive jurisdiction provision in § 27 of the Exchange Act provides a more expansive basis for federal-question jurisdiction than § 1331, holding that § 27 is co-extensive with § 1331. *Id*. at 167. The defendants appealed that portion of the Third Circuit's decision to the Supreme Court (but not the ruling on § 1331 itself). *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 194 L. Ed. 2d 671 (2016). The Supreme Court affirmed, and, as a part of its analysis, posed an instructive hypothetical:

> Consider, for example, a simple state-law action for breach of contract, in which the plaintiff alleges, for atmospheric reasons, that the defendant's conduct also violated the Exchange Act, or still less, that the defendant is a bad actor who infringed that statute on another occasion. On Merrill Lynch's view, § 27 would cover that suit; indeed, Merrill Lynch points to just such incidental assertions as the basis for federal jurisdiction here . . . . But that hypothetical suit is "brought to enforce" state contract law, not the Exchange Act-because the plaintiff can get all the relief he seeks just by showing the breach of an agreement, without proving any violation of federal securities law. The suit, that is, can achieve all it is supposed to even if issues involving the Exchange Act never come up.

*Id*. at 1568-69. On the other end of the spectrum, the Supreme Court noted that, "on rare occasions," a state-law claim may hinge upon "the plaintiff's ability to prove the violation of a federal duty." *Id*. at 1569 (citing *Grable*, 545 U.S. at 314-15). To illustrate, the Supreme Court hypothesized that, if a "state statute simply makes illegal any violation of the Exchange Act," then a "plaintiff seeking relief under that state law must undertake to prove, as a cornerstone of his suit, that the defendant infringed a requirement of the federal statute." *Id*. at 1569 (internal quotation marks omitted). In

this hypothetical, according to the Supreme Court, the state-law claim is a federal claim under the Exchange Act. *Id*.

The facts in the present case closely resemble the first hypothetical presented by the Supreme Court. The amended complaint does not expressly invoke claims or seek relief under the Exchange Act. It contains no reference to the Exchange Act or other federal laws or regulations. Nor do plaintiffs' claims require them to prove that the defendants violated the Exchange Act. Owens and Hurliman seek damages and an injunction for breach of fiduciary duties under Arkansas law related to misrepresentations in Bear State's proxy statement, which does not require proof that the defendants violated the Exchange Act.

The defendants also argue that because Owens and Hurliman seek an injunction that will change the content of Bear State's proxy statement, they are asking the Court to determine what content the Exchange Act requires in a proxy statement. This argument misconstrues the plaintiffs' claims. They seek an injunction that will, if granted, require the defendants to "disclose[] . . . information that has been omitted from the Proxy to the Company's shareholders." Document #3 at 42. They do not allege that they are owed truthful and complete information about their investments because of the Exchange Act; rather, they allege that they are owed such information because of Arkansas law. If the defendants are forced to alter their proxy statement, it will be as a result of their obligations under Arkansas law, not the Exchange Act. The well-pleaded complaint rule allows plaintiffs "to choose a state law cause of action." *Moore v. Kansas City Publ. 7Schs.*, 828 F.3d 687, 693 (8th Cir. 2016). Here, plaintiffs chose to allege state-law causes of action as remedies for the defendants' alleged misrepresentations. Thus, their claims do not necessarily raise a substantial question of federal law. *Id*.

9

Judge Eisele decided a case similar to this one in *Hiegle v. Morgan Keegan & Co., Inc.*, 2009 WL 46067240. There, the plaintiffs were individual investors who commenced an action against Morgan Keegan in state court alleging securities fraud under the Arkansas Securities Act. *Id.* at *1. Morgan Keegan removed the case to federal court. *Id.* After finding that diversity jurisdiction was lacking, Judge Eisele addressed the issue of federal jurisdiction. *Id.* He noted that the language of the Arkansas Securities Act tracked the language of the Security & Exchange Commission's Rule 10b-5, enacted under § 10(b) of the 1934 Securities Exchange Act, which meant that considerations of federal law and regulations might be relevant to the issue of whether Morgan Keegan breached the state law; but, "this does not mean a substantial federal question must be resolved." *Id.* at *4. Finding that the Arkansas Securities Act claims did not necessarily raise a disputed and substantial federal issue, Judge Eisele ordered the case remanded to state court. *Id.*

The same result must be obtained here. Owens and Hurliman, as masters of their amended complaint, have alleged only state-law claims that the proxy statements are materially misleading. While consideration of federal law and regulations might be relevant to the issue of whether the proxy statements are materially misleading, this does not mean that a substantial federal question must be resolved. Federal question jurisdiction is absent.

**B.  Diversity Jurisdiction**

In their notice of removal, defendants argue that diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a). Document #1 at 16-28. The plaintiffs argue that the forum-defendant rule, codified at 28 U.S.C. § 1441(b)(2), precludes removal under U.S.C. § 1332(a). The forum-defendant rule states that a "civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and

served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). The defendants concede that, "should the Court determine that federal question jurisdiction does not exist, the forum-defendant rule would apply." Document #19 at 29 (citation omitted). The Court has determined that no federal question exists. Therefore, the forum-defendant rule applies.

## CONCLUSION

The motion to remand is GRANTED. Document #14. This action is remanded to the Circuit Court of Pulaski County, Arkansas.

IT IS SO ORDERED this 16th day of March, 2018.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE